

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX SUPERIOR COURT

CIVIL ACTION NO.

Mark Nelson Individually

Plaintiff, v.

JEFFREY M. HULL, in his Official Capacity as Town Manager and as former Assistant Town Manager of the Town of Wilmington AND Individually;

VALERIE GINGRICH, in her Official Capacity as Director of Planning & Conservation AND individually;

JOHN (Al) SPAULDING, in his Official Capacity as the Building Inspector of the Town of Wilmington and Individually;

Gregory Bendel, Kevin Caira, Jonathan Eaton, Jomarie F. O'Mahony, Gary DePalma collectively and individually as duly elected officials at all times relevant to this complaint was an individual residing in Wilmington and as a member of the Board of Selectman;

Michael J. Woods (Woods) is an individual and duly appointed Superintendent of the Department of Public Works & Superintendent of Streets and at all times relevant to this complaint and individual residing in Hampstead, NH. County

Paul Alunni (Alunni) is an individual and duly appointed Town Engineer and an individual believed to be residing in Peabody, Essex County.

Marie (Toni) Larivee (LaRivee) is an individual and was duly appointed Senior Clerk of the Building Inspector's Office and Clerk for the Board opf Appeals and at all times relevant to this complaint an individual residing at 20 Sherwood Road Wilmington, Middlesex County;

Town of Wilmington (Town) is a municipality existing under the laws of The Commonwealth of Massachusetts and is or was at all times relevant to the claims brought in this complaint the employer and or insurer with a usual place of business at 121 Glen Road, Wilmington Massachusetts 01887.

Defendants.

**7/6/2020**

JB

**RECEIVED**

## COMPLAINT AND JURY DEMAND

### Introduction

The plaintiff seek redress for violations of their State and Federal Civil Rights and other related wrongs

suffered by them, in violation of the laws of the Commonwealth of Massachusetts and the United States of America.

Among other things, the defendants have unlawfully violated plaintiff's rights of equal protection by knowingly and intentionally singling him out for discriminatory treatment. For over 32 years, the defendants continuously interfered with and prevented the development and sale of the plaintiffs' residentially zoned land through a concerted campaign to harass, intimidate and abuse the plaintiff. Defendants Hull, Gingrich and Spaulding improperly and unlawfully used their official positions to discriminate against harass and injure the plaintiff. The Town of Wilmington ratified and joined the unlawful actions of defendants' and other of its agents and representatives by fabricating alleged violations, interfering with the sales and purchases of properties, breaching agreements and has causing substantial financial loses, collateral damages.

The individual defendants have collectively engaged and continue to engage in coercion and conspiracy, extortion, collusion to intimidate, harass, humiliate, injure and deprive Mr. Mark Nelson, my daughter Ms. Kristen Nelson, of our civil rights, property rights and those rights protected by the Constitution of the Commonwealth of Massachusetts and the Constitution of The United States of America. As a direct result of these actions we have been put to a great expense, experienced anxiety, emotional distress and suffered substantial financial hardship. I believe that town representatives actions were fraudulent, deceptive practice, negligent and or intentional tort and that the laws, rules, regulations and policies adopted were promulgated and adopted negligently and without regard for the rights of the public and exhibits lack of that degree of due care which reasonable individuals would show in executing their duties. On numerous occasions, various Town Department Heads provide misdirection, misinformation and misleading false applications. The individuals referred to above and any others that may become known are likewise the object of this demand relative to their primary individual responsibilities in an amount to be determined and will be subject to court action in the event that this matter is not settled to my satisfaction. A clear pattern of practice has been demonstrated over the past thirty two years showing an obvious scheme of harassment, as well as a total disregard to the life, liberties and pursuit of happiness and those involved will be held accountable. Most notably; Ms. Marie LaRivee's supervisory negligence, abuse of authority and selective enforcement all as identifiable tort by returning 3 completed Board of Appeals applications appealing the decisions of the Inspector of Buildings.

The following unresolved matters must be resolved as soon as possible;

A.      Actions of Town Administration has violated both the Federal and State Constitutions denying the

2

Freedom and Liberty to earn a living and buy sell and develop property.     Damages in an amount of $ 3,000,000

B.     The Towns Failure to Update the alleged "OFFICIAL MAP" SINCE 1973, failure to comply with Commonwealth of Massachusetts statutes and adopt compliant applications, fee schedules or Rules and Regulations.

C.     Defamatory slanderous statements made by Town Manager Jeffrey Hull at Open Town Meeting that I, Mark Nelson will obtain permits when I comply with what the Town demands. Mr. Hull also instructed the former Town Clerk, Ms. Sharon George on June 16, 2016 not to date time stamp my applications as required by law MGL 40A, s. 15..

D.     Over the years the Town Administration has blocked every Petitioned Town meeting Article submitted with Violations of the Open Meeting Laws.

Based on the above and stated, I respectfully request that any and all related file folders be set aside and secured as well as all electronic mails and hard drives for those individuals listed. If the town has a published policy that relates to these type matters, please provide me with a copy of that published policy and date that it went into effect. This letter also serves that this municipality knows or should have known about an underlying identifiable tort and supervisory negligence as an ongoing liability with actions intentional and wanton and reckless.

This complaint is pursuant to Massachusetts Civil Rights Act, G.L.c.12 § 11-H,& 11-I, the Massachusetts Constitution, Massachusetts Declaration of Rights and the United States Constitution. .

In addition, the Plaintiff will seek in accordance with G.L. c. 258 substantive claims against certain department administrators identified herein concerning actions and their failure to act, for review of errors of law apparent in administrative actions and the improper actions, the administration has failed, to respond within the timeframe allotted by G.L. c .258 §4, to make an offer of settlement of certain additional liability pursuant to such written demands. .     The Defendants by their actions as detailed above did unlawfully infringe on the Plaintiffs' equal rights to make and enforce contracts and to otherwise enjoy the full and equal benefit of the laws.

This case involves a thirty two-year battle with the defendants who have unlawfully violated plaintiff's rights of equal protection by knowingly and intentionally singling them out for discriminatory treatment. For over 3

3

decades, the defendants continuously interfered with and prevented the development and sale of the plaintiffs' residentially zoned land through a concerted campaign to harass, intimidate and abuse the plaintiff, Mark D. Nelson ("Nelson") and his family and to locate private ways on the Official Map. It is crucial to Nelson that the private ways remain private and not "OPEN TO THE PUBLIC".

## PARTIES

1. The Plaintiff Mark Nelson individually t (hereinafter: Nelson"), is an individual who resides at 12 Polk Street, Wilmington, Massachusetts. 01887.

2. The Defendant JEFFREY M. HULL is the Town Manager (former assistant Town Manager) and chief executive officer of the Town of Wilmington, with a principal place of operation of 121 Glen Road, Wilmington, Massachusetts. 01887-3597.

3. The Defendant JOHN (Al) SPAULDING is the Inspector of Buildings of the Town of Wilmington, with a principal place of operation of 121 Glen Road, Wilmington, Massachusetts. 01887-3597.

4. The Defendant. VALERIE GINGRICH is the Director of the Wilmington Planning Board & Wilmington Conservation Commission ("the Director"), which has a principal place of operation of 121 Glen Road. Wilmington, Massachusetts, 01887-3597.

5. The Defendant, Gregory Bendel, Kevin Caira, Jonathan Eaton, Jomarie F. O'Mahony, Gary DePalma collectively and individually as duly elected members of the Board of Selectman of the Town of Wilmington, with a principal place of operation of !21 Glen Road, Wilmington, Massachusetts, 01887-3597.

6. The Defendant Michael J. Woods (Woods) is an individual and duly appointed Superintendent of the Department of Public Works & Superintendent of Streets and at all times relevant to this complaint and individual residing in Hampstead, NH. County, with a principal place of operation of !21 Glen Road, Wilmington, Massachusetts, 01887-3597

7.      The Defendant. Paul Alunni (Alunni) is an individual and duly appointed Town Engineer and an individual believed to be residing in Peabody, Essex County, with a principal place of operation of !21 Glen Road, Wilmington, Massachusetts, 01887-3597

8.      The Defendant. Marie (Toni) Larivee  (LaRivee) is an individual and was duly appointed Senior Clerk of the Building Inspector's Office and Clerk for the Board of Appeals and at all times relevant to this complaint an individual residing at 20 Sherwood Road Wilmington, Middlesex County;

9.      The Defendants, Town of Wilmington (Town) is a municipality existing under the laws of The Commonwealth of Massachusetts and is or was at all times relevant to the claims brought in this complaint the employer and or insurer with a usual place of business at 121 Glen Road, Wilmington Massachusetts 01887.

## UNDISPUTED BACKGROUND FACTS

10.      Plaintiff repeats and realleges the allegations of previous paragraphs, as if they were contained herein.

### The Parcels

11.      Parcel (20) at issue on Assessor's Map 6 is located on Poplar Street as number 4.

Parcel 20 consists of 13 lots 192- 204 inclusive, (36,016 square feet), Parcel (40) at issue on Assessor's Map 6 is located on Polk Street as number 12,  Parcel 40 consists of lots .254,255,256,285,286,287,288, 289,290, 291 and 292 2- 204 inclusive, (28,050 square feet) and Parcel (26) at issue on Assessor's  Map 6 is located on Sharon Street as number 6,  Parcel 40 consists of lots 229, 230, 231, 232 inclusive, (10,000 square feet) are part of the

old Wilmington Gardens Addition Subdivision, Middlesex North Registry of Deeds Plan

Book 26 Plan 36 dated June 14, 1909, and predates the Subdivision Control Law and are

exempt. (MGL C. 41, s. 81FF), the Wilmington Gardens Addition Subdivision, contains

552 lots.

12.      The Section 81 FF exemption applies to the private ways as it is adjacent to the

exempt lots and downstream until it connects to the Public Way, Beech Street. Toothaker

v. Planning Board of Billerica, 346 Mass. 436, 193 N.E. 2d 582, 584-585 (1963). At trial,

the plaintiffs proved that the lots along the paper streets in question are located on Private

Ways located in a 100-year-old subdivision recorded at the North Middlesex Registry of

Deeds. (New England Landevelopment, Inc, v. Board of Appeals. Town of Wilmington

et al_ civil action no. 219125, Land Court.)

CHRONOLOGICAL FACTS

13.      On April 15, 1987, the Conservation Commission issued an order of conditions

DEQE 344-243, to David Newhouse that included conditions to pave  Mather St through

an easement on Map 6 Parcel 51 to the end of the lot line on Walnut St. M.N.R.D. Book

4092 page 24..

14. A Public Hearing was held at the Town Hall, 121 Glen Road, on November 25, 1986

at 7:00 p.m. on the application of David Newhouse, 311 Middlesex Avenue, Wilmington

to construct a single family dwelling on land not shown or made part of the Official Map

(General Law, Chapter 41, Section 81E) on a way known as Mather Street (Map 6 Parcel

51) Notice of this hearing was advertised in the November 5, 1986 and November 12,

1986 issues of the Wilmington Town Crier. Notices of this hearing were also posted in

the Town Hall and sent to the applicant and all abutters located within 300 feet of the

specified property, and the Wilmington Planning Board. The Board of Appeals approved

6

case no S-69-86 on December 9, 1986 that included conditions to pave Mather St through an easement on Map 6 Parcel 51 to the end of the lot line on Walnut St.

15.     On February 14, 1989, my family exchanged lots on Bruning Road Wilmington Massachusetts for lots 192-204 map 6 parcel 20 (4 Poplar St.) M.N.R.D. Book 4805 page 204 from Mr. Joseph Langone 20 Middlesex Ave. Wilmington, Massachusetts 01887.

16. Mr. Langone agreed to conditions in paragraph 13 & 14, and was to pave through the easement on Map 6 Parcel 51 (2 Mather Street) to the end of the lot line. (see application for building permit)

17. Mr. Langone never paved through the easement to the end of the lot line as conditioned and is the President of Northeast Development Corp. 20 Middlesex Ave. Wilmington Massachusetts.

18. Mr. Newhouse has a Law Office in Mr. Langone's building at Middlesex Ave. Wilmington, Massachusetts.

19.     The February 14, 1990 Town Crier Newspaper, (page 1) "Joe Langone and Dick Stuart of Northeast Development Corp. state "absolutely intend to go after Mr. Nelson"

20.     Mr. Michael A. Caira is appointed Town Manager on July 1, 1990 and promptly hires Toni Larivee  to Building Inspector's office and Lynn Duncan as Planning/Conservation Director.

21.     A Notice of Intent was filed February 23, 1995 and                          A "SUPSEDEING ORDER OF CONDITIONS" WAS ISSUED BY THE COMMISSIONER OF THE DEP. MR. DAVID B STRUHS. ON MAY 10, 1996 AND RECORDED on MAY 16, 1996. MNRD BOOK 8027 PAGE 68.

7

37.     On February 14, 2000, Chief Justice Peter Kilborn renders a decision that several

Map 6 Parcels are exempt from subdivision control MGL chapter 41 section 81 FF.

38. Judge Kilborn also determines that property owners that do not want to Open the Way

accessing a property to the Public do not need 81 G approval from the Planning Board.

39.     On February 14, 2000, Chief Justice Peter Kilborn renders a decision that Map 6

Parcel 20 is exempt from subdivision control MGL chapter 41 section 81 FF.

40.     On June 23, 2000 an 81-G application was filed with the Planning Board.(this is

the first ever 81G application filed in the history of the Town of Wilmington.

41.     On June 27, 2000 a Foundation Only permit was issued for 4 Poplar St.

42.     On June 28, 2000 The Certificate of Approval Plan #SUB 96-4, 2 lots Map 6

Parcels 22 & 43 (now expired) is recorded at the MNRD, Book 10902 page 39.

43.     On July 25, 2000, the Planning Board issued a Certificate of Disapproval for the

81-G application filed and demanded that the disapproval be recorded at the M.N.R.D.

44.     On August 31, 2000, 81G Application is submitted to Board of Appeals to seek

relief from Official Map and issue Building permit.  CASE No 44-2000.

45.     October 16, 2000, Board of Appeals unanimously grants approval.

46.     The Planning Board held an unadvertised emergency meeting on October 30,

2000 @ 6:00 p.m.

47.     On November 3, 2000, without holding a legal meeting, voted to appeal the

decision of the Board of Appeals. LAND COURT CASE NO. 267499, (DISSMISSED

2013). The Planning Board sued the Board of Appeals and the Plaintiff.

48.     The Town appoints Michael J. Newhouse as Town Counsel July 1, 2002.

49.     In August 2002 the Town adopts "Open Space & Recreation Plan.(3. Wilmington Gardens Wildlife Preserve)

50.     Litigation in Superior Court Settlement Agreement recorded at MNRD Book 17733 Page 170, 8/19/2004,. and the Land Court Docket No. 285904 were filed as a result of the Town issuing a Building Permit for 11 Walnut St.

51.     On August 23, 2002 Nelson writes the Board of Selectman and requests assistance with the Betterment Process for Walnut and Page Streets. And petitions Article 41, 2003 to improve Curtis St. via betterments.

52.     Nelson discovers the 1929 Building By Laws as approved September 21, 1928. (Joseph E. Warner Attorney General)

53.     On December 16, 2002, Town Counsel Newhouse renders his opinion (opinion on file with Town Clerk) with regards to Nelson discovery of the 1929 Building By Laws as approved September 21, 1928. (Joseph E. Warner Attorney General)

54.     To this day Walnut Street continues to be a private way as it has never been accepted as a public way by the Town of Wilmington.

55.     On February 18, 2003, Sorrentino while at an audio taped open public Planning Board meeting asked Nelson to "sue me".

56.     Also at that meeting Sorrentino states that my Father George Nelson does not have much longer to live.

57.     Shortly after asking Nelson to "sue me", Sorrentino arranged (Jeff Hull calls WPD, certified police audio tape recording available) to have the Police called to the

9

public meeting and further place fear into Nelson and intimidate him. (Police arrived after Nelson left and searched the entire building for him.)

58.     On every occasion after that instance Sorrentino arranged to have Police presence at a public hearing to again place fear and intimidation into Nelson.

59.     On March 24, 2003 the Inspector of Buildings finally issues the Certificate of Occupancy for 3 Poplar St. (306 days after the sale to Denise Fillios who in turn rents the property until today)

60.     On April 15, 2003 (received via First Class Mail prepaid USPS on April 22, 2003) the State Building Code Appeals Board issued a Decision and "DENIED" the application filed with the Board by Mark Nelson.

61.     On May 14, 2003, Nelson is forced to file a complaint against the Town Building Inspector and the State Building Code Appeals Board in and effort to secure a building permit for 4 Poplar Street. (Superior Court Docket No. 03-2097).

62.     Town Counsel Newhouse renders his opinion (opinion on file with Town Clerk) with regards to Nelson discovery of the 1929 Building By Laws as approved September 21, 1928. (Joseph E. Warner Attorney General)

63.     On March 31, 2003, the Planning Demands uncompensated easements MNRD Book 14986 Page188, prior to issuing a Building Permit for 4 Page Street (a private driveway), Wilmington Ma.

64.     On April 16, 2003, the Inspector of Buildings Daniel Paret Demands that George Nelson deposit $ 33, 593.00 with the town Treasurer prior to issuing the Building Permit

for 4 Page Street Wilmington, Ma. 01887. Funds are currently being held by Bank of America, 1 Fleet Way, Scranton Pa. 18507. [ACCOUNT NO. 94-1687665400059]

65. On November 10, 2003 4 Page Street is sold to an extended family member Richard and Suzanne Pellegrino, MNRD Book 16510 Page 256.

66. On February 12, 2004, George Nelson requests that both escrow accounts funds held by Bank of America, 1 Fleet Way, Scranton Pa. 18507. [ACCOUNT NO. 94-1768685400036] & [ACCOUNT NO. 94-1687665400059] with interest totaling $ 60,058.29 to be returned to George and Mary Nelson.

67. On or about March 10, 2004, settlement agreements are negotiated for 3 pending cases.

68. On March 10, 2004 a Building Permit is issued for 4 Poplar Street. Permit no. 20040351, after 15 years and numerous court cases.

69. On July 1, 2004, Ms. Carole Hamilton returns to Wilmington and is hired to replace Ms. Lynn Duncan as the Planning/Conservation Director.

70. On June 1, 2005 Fire Department, Mr. Ed Bradbury signs off on the application for occupancy,  Plumb Inspector, Mr. Paul Raffi signs off on the application for occupancy, Water Department, Mr. Michael Woods signs off on the application for occupancy, On June 28, 2005 Conservation Agent, Ms. Winifred McGowan signs off on the application for occupancy.(and the certified plot plan), On June 30, 2005 Health Agent, Ms. Shelley Newhouse signs off on the application for occupancy, On June 30, 2005 Principal Assessor, Mr. Humphrey Moynihan signs off on the application for occupancy, On June 30, 2005 Town Treasurer, Mr. Ronald Mendes signs off on the

application for occupancy, .On July 12, 2005 Highway Department, Mr. Donald Onusseit signs off on the application for occupancy. (and the certified plot plan), On July 12, 2005 Engineering Department, Mr. Anthony Pronski signs off on the application for occupancy.(and the certified plot plan)

71.    On July 12, 2005 Planning Department, Ms. Carol Hamilton refuses to and fails to sign off on the application for occupancy.(this begins a series of numerous request to Ms. Hamilton to sign off, the sign off spot for this department was added in 2004. Ms. Carol Hamilton is not an American Institute Certified Planner. Ms. Hamilton has failed to pass the On Line State Ethics Exam as required.

72.    Numerous requests are made to the Electrical inspector to complete a Final Inspection. Fred Sutter signs off on the Application for Occupancy Permit on September 20, 2011. (Mr. Sutter states that he was told not to complete final inspection by other administrators at the Town Hall.)

73.    From the date Principal Assessor Mr. Humphrey Moynihan signed off on the application for Occupancy until 10 case were filed with the Appellate Tax Board  the property taxes have increased significantly as shown in property tax bills, abatements and Appellate Tax Board cases on record.(Mr. Moynihan retires after AGO finds Open Meeting Violations against the Board of Assessors.

74.  On August 1, 2004, The  Planning Board, finally complies with MGL, chapter 41 section 81Q and adopts a fee schedule for 81G applications, 1630 days after Judge Kilborn's Decision.(The Town as of today has failed to comply with the adoption of 81G application forms or Rules & Regulations to hear and decide 81G requests.

75.     On August 31, 2017 4 Poplar Street was sold for $ 800,000 without the benefit of an occupancy permit and $ 301,300 less than the $ 1,101,300 assessment of 2012.

76.     After several correspondences back and forth, I write the Chairman of the Board of Selectman on October 10th and November 7th 2006 requesting that a meeting be arranged with all the department heads to resolve all the outstanding issues with Nelson Family owned properties.

77.     On December 18, 2006, Town Manager Caira finally responds and agrees to arrange a meeting.

78.     On December 28, 2006, the Nelson Family hires Attorney Joseph W. McDermott of Frisoli & Associates to best address the Town Department heads and contended issues.

79.     On January 31, 2007 a meeting takes place at the Town Hall with Town Manager Michael Caira, Town Counsel Mr. John Hucksum, Town Engineer Mr. Anthony Pronski, Department of Public Works Mr. Donald Onusseit, Water Department Superintendent Mr. Michael Woods, Director of Planning and Conservation Ms. Carol Hamilton, Inspector of Buildings Mr. Daniel Paret, Chairman of The Board of Selectman Mr. Raymond Lepore, Attorney Joe McDermott and Mark Nelson. (meeting starts at 11 a.m. and ends at 1 p.m.

80.     The following lists are discussed List of Properties to set aside and secure.

1.      8    SHARON ST.

2.      3 POPLAR ST.

3.      4 POPLAR ST.

4.      4 PACE ST.

13

5.      9 WALNUT ST.

6.      11 WALNUT ST.

7.      5 POLK ST.

8.      6 POLK ST.

9.      18 DORCHESTER ST

10.     THIRD AVE. SEWER EXTENT/ON

11.     LOTS 5-8 EDGEWORTH RD.

12.     LOTS 9-14 EDGEWORTH RD.

13.     DEP FILE #344*496

14.     DEP FILE344-524

15.     DEP FILE #344-368

16.     4 PITMAN ST.

81.     At the end of the meeting it appeared that not much was accomplished in so far as resolving much of anything.

82.     On February 6, 2007 Attorney: Catherine J. Savoie, Firm: Posternak Blankstein and Lund LLP Address: Prudential Tower   800 Boylston Street Boston, Massachusetts 02199, is contacted to handle the pending litigation in the Land Court for 8 Sharon Street, Wilmington, Ma.(20 years to obtain a building permit)

83.     Attorney Savoie, takes over Land Court Docket No. 02-misc 284416 KFS, and a Settlement Agreement is finally reached after an expenditure of over $ 40,000 and a

Building Permit is finally issued after 20 years of litigation for 8 Sharon street.
(Settlement Agreement is then breached by the Town of Wilmington on or about
November 30, 2009) Town blocks occupancy permit that initiates additional litigation
delaying the sale to April 2010. (Hamilton returns bond money to buyer and not Plaintiff
$ 10,000).

84.     On February 20, 2007, Attorney Peter S. Brooks, and Jay Kesten  Firm: Seyfarth
Shaw LLP, World Trade Center East, Two Seaport Lane, Suite 300, Boston, MA 02210-
2028, Phone: (617) 946-4800,  Fax: (617) 946-4801, to make a public records request
concerning town emails.

85.     On March 5, 2007, Attorney Brooks is hired and after a significant expense in
excess of $ 10,000, Superior Court case MICV2008-00780 and Appeals Court Case
2010-P-1313 are filed and remedies exhausted to preserve all of the Town emails related
to the Nelson Family dating back to January 1, 2000.

86.     On July 1, 2007 Town Manager Mr. Michael Caira significantly increases Town
Counsel Deutsch Williams Brooks DeRensis & Holland, P.C.

 One Design Center Place, Suite 600,  Boston, MA 02210, to over $ 250,000 annually flat
fee plus costs and expenses.

87.     Dated: December 4, 2006, TRIAL COURT SUPERIOR COURT DEPT.
CAMBRIDGE SESSION CIVIL ACTION NO  06-4347, COMPLAINT AND JURY
DEMAND, Appeals Court Docket No. 2008-P-1387

125.     On January 1, 2008, CHAPTER 258. CLAIMS AND INDEMNITY
PROCEDURE FOR THE COMMONWEALTH, ITS MUNICIPALITIES, COUNTIES

15

AND DISTRICTS AND THE OFFICERS AND EMPLOYEES THEREOF   is served on

the Town, Mr. Michael J. Newhouse, Chairman, Board of Selectman; Mr. Michael A.

Caira;

88.      At Annual Town Meeting, May 1, 2008, ARTICLE 27. (drawn #19) To see if the

Town of Wilmington will vote to authorize transfer of the care, custody, management and

control of a certain parcel of land owned by the Town of Wilmington hereafter described

to the Selectmen of the Town of Wilmington, said land having been determined to be no

longer needed for any municipal purpose, and for the express purpose of conveying the

same, all in accordance with Massachusetts General Laws Chapter 30B; and further that

the Selectman be and hereby authorized to grant and convey such interest in the land as is

owned by the Town of Wilmington and upon such terms and conditions as shall be

determined by the Selectman in accordance with Chapter 3, Section 16 of the By-laws of

the Inhabitants of the Town of Wilmington Revised. Said parcel and interest is described

as Map 6, Parcel 19A; or take any other action related thereto.

Finance Committee recommended approval of this Article contingent upon determination

of surplus. Planning Board offered no recommendation.

MOTION: On motion of Mr. Doherty, and duly seconded, the Town of Wilmington

voted to Passover Article 27. (Land was not considered surplus by Town Manager)

89.      On or about May 8, 2008 Inspector of Buildings, Mr. Daniel Paret resigns under

unusual circumstances and is replaced by current Inspector of Buildings Mr. John (Al)

Spaulding.

90. On June 16, 2009, The EOCD, replies to Mark Nelson 6 Polk Street Wilmington, MA 01887, RE:   Public Records Request

Dear Mr. Nelson:

This Department has search its files including archive files and we do not have an "Official Map" of the Town of Wilmington adopted on June 25, 1973 or any other map, in our possession. Very tally yours, /

Candace Tempesta Contracts Specialist Office of the Chief Counsel

The EOCD nor the DHCD have ever approved the "OFFICIAL MAP". INVALID

91.     At Annual Town Meeting 2009, ARTICLE 37. To see if the Town will vote to authorize transfer of the care, custody, management and control of a certain parcel of land owned by the Town of Wilmington and currently in the care and custody of the Town Manager and/or Board of Selectmen hereinafter described to the Conservation Commission. Said parcel is described as Map 6 Parcel 21; or take any other action related thereto.

92.     As of today the Town of Wilmington has failed to report the issuance of any 81G Approvals OR Disapprovals in the Towns "Annual Report".

93.     On February 28, 2006, MNRD Book 19858 Page 223, transfers the rights to the watermain and fee interests in ways to Mark Nelson.

94. On Thursday, June 11, 2009, the Plaintiff Volunteers for the Land Stewardship Program Wilmington Planning and Conservation Department.

95.     To this day Mather, Walnut, Polk, Poplar, Sharon and Page Streets all continue to

be private ways as they have never been accepted as a public ways by the Town of

Wilmington.

96.     At the  ANNUAL TOWN MEETING – SATURDAY, MAY 1, 2010

WITH ACTION TAKEN THEREON: ARTICLE 37. (drawn #28) To see if the Town

will vote to authorize the Board of Selectmen to enter

into an agreement, the terms of which shall be determined by the Selectmen, to sell,

convey or otherwise dispose of any land within the parcel depicted by Assessors' Map 6

as Map 6 Parcel 20 in which the Town might claim a right, title or interest to, following a

determination made by the Town Manager that such land is not needed for any municipal

purpose, in accordance with Chapter 3, Section 16 of the By-laws of the Inhabitants of

the Town of Wilmington Revised and other applicable law; or take any other action

related thereto. A true copy of Map 6 is on file with the Town Clerk's office. Article 37

will be passed over and no action taken as the petitioner withdrew the Article. This article

was submitted by Michael Newhouse's relative Craig Newhouse.

97.     At the Board of Selectmen Meeting Minutes – February 22, 2010

Page 8, REVIEW OF ANNUAL TOWN MEETING WARRANT ARTICLES

SUBMITTED BY PETITION: The Board was advised that the article submitted by Mark

Nelson to "Amend, Update and Revise the Official Map" will not appear on the Warrant

as the Town Clerk determined that an insufficient amount of signatures were filed with

the petition. The Town Clerk has advised the petitioner of her determination who is

contesting that determination. (The Town Clerk failed to recognize the signature of a long

18

standing resident of the community and blocked the petition from being place on the

Warrant for Town meeting.)

98.     At the Board of Selectmen Meeting Minutes – March 8, 2010

Page 6: BOARD TO CONSIDER REQUEST OF MARK NELSON TO PLACE

PETITIONED ARTICLE ON THE WARRANT FOR THE 2010 ANNUAL TOWN

MEETING: Chairman Newhouse noted that Mr. Nelson was not present and asked if

there were any questions, comments or a motion. Selectman McCoy stated that ten

signatures are required to place an article on the Warrant and stated that Mr. Nelson

should have obtained more than ten signatures. He stated that he felt compelled to

support the Town Clerk as she gave the matter due diligence and the petition does not

meet the criteria of the Town. Chairman Newhouse stated that he agrees and he does not

want to set precedent to include articles in the Warrant where the petitioner has not met

the requirements. Chairman Newhouse stated that the work that Mr. Nelson is requesting

is already being done.

Chairman Newhouse asked if there were any additional comments. A motion was made

by Selectman McCoy, seconded by Selectman Lepore and by the affirmative vote of all,

it was VOTED: That the Board of Selectmen deny the request of Mark Nelson to place a

petitioned article on the Warrant for the 2010 Annual Town Meeting.

99.     At ANNUAL TOWN MEETING – SATURDAY, APRIL 30, 2011

WITH ACTION TAKEN THEREON: With a quorum present at 10:50 a.m.

ARTICLE 28. (drawn #4) To see if the Town will vote to amend Section 3 of the Town

Charter of the Town of Wilmington, by adding the following language "Elective

Officers" shall serve no more than two consecutive terms." To the end of Section 3 of the

Town charter, as shown in the By-laws of the Inhabitants of the Town of Wilmington

Revised; or take any other action related thereto.

Finance Committee recommended disapproval of this Article. MOTION: On motion of

Petitioner Mark Nelson, and duly seconded, the Town of

Wilmington voted to defeat Article 28

100.     ARTICLE 34. (drawn #2) To see if the Town will vote to amend, update and

revise the "Official Map" of the Town of Wilmington, dated January 1, 1973, prepared

for the Planning Board by the Engineering Department and adopted by the Town of

Wilmington under Article 17 of the Warrant for Special Town Meeting of June 25, 1973,

and recorded at the Middlesex North Registry of Deeds on August 20, 1973, in Book of

Plans M, Plan 712,to show the now existing public ways, parks and private ways in

accordance with the Massachusetts General Laws Chapter 41, Sections 81E, F and G,

provided said map has been lawfully adopted, maintained and is still valid; or take any

other action related thereto.

Finance Committee recommended disapproval of this Article.

Planning Board failed to make any recommendation as required by statute.

MOTION: On motion of Mark Nelson, Petitioner, and duly seconded, the Town of

Wilmington voted to defeat Article 34.(The Town manager spoke to the meeting and

stated that all the maps are up to date. False Statement)

101.     ARTICLE 36. (drawn #5) To see if the Town will vote to establish a disabled

veterans tax work-off program and raise and appropriate a sum of $10,000 for the

purpose of providing disabled veterans work opportunities for services rendered to the town in accordance with said program; or take any other action related thereto. Finance Committee recommended disapproval of this Article. MOTION: On motion of Mr. Nelson, and duly seconded, the Town of Wilmington voted to defeat Article 36.

The meeting adjourned at 2:40 p.m. with 213 registered voters and 31 non-voters attending. Sharon George, Town Clerk.

102.    As of today the Town of Wilmington Planning Board has never formally adopted MGL chapter 41, section 81G at any Town meeting, however the Board of Appeals has.

103.    The Town has adopted MGL chapter 41 sections 81K-81GG as stated in the Rules and Regulations Governing The Subdivision of Land Wilmington Massachusetts, April 29, 1975.

103.    On February 12, 2011 Nelson served RE: CHAPTER 258. CLAIMS AND INDEMNITY PROCEDURE FOR THE COMMONWEALTH, ITS MUNICIPALITIES, COUNTIES AND DISTRICTS AND THE OFFICERS AND EMPLOYEES THEREOF.

104.    On April 4, 2011 the Town Engineering office revised a DRAFT, Official Map of The Town of Wilmington and it is displayed and used in Room 5 until today.

105.    Numerous correspondence have sent to Mr. Charles E. Boyle,

Chairman of Board of Appeals, and Mr. Louis Cimaglia, IV, Chairman

Board of Selectman, Wilmington Town Hall, 121 Glen Rd., Wilmington, Ma. 01887, Re: Land Court Case 267499; Planning Board v Board of Appeals & Mark Nelson Request to meet in Executive Session, to hire counsel for the Board of Appeals. (all have been ignored)

21

106.    On or about February 3, 2012, Nelson filed 2 Petitions to place the Warrant at

Town Meeting; A, To place approximately 239 feet of Poplar Street on the Official Map

and B; To place approximately 537 feet of Polk Street on the Official Map: Articles 37 &

38 respectively.

107.    The Planning Board met on Tuesday, February 28, 2012 at 7:30 p.m. in

Auditorium, Town Hall. The following members were present: Michael Sorrentino,

Chairman; James F. Banda, Jr.; Randi Holland; Brian Corrigan and Ann Yurek. Carole

Hamilton, Director of Planning, and Michael Vivaldi, Assistant Planner, were also

present.: Old Business, Discuss Official Map , Corrections or additions, C. Hamilton

asked the Board if members had any changes, corrections or comments. She also

discussed M. Nelson's petitioned articles for the inclusion of Polk and Poplar Streets on

the Official Map. See attached report to the Wilmington Board of Selectman and Town

Meeting.

Upon motion duly made and seconded with four in favor and one abstention (Brian

Corrigan) it was: VOTED: To recommend to the Board of Selectman and Town Meeting

that Polk and Poplar Streets, as requested in the petition, not be added to the Official Map

or laid out in any way.(Yurek and Sorrentino failed abstain from the Vote as Plaintiffs in

Land Court Case 267499; Planning Board v Board of Appeals & Mark Nelson)

108.    The alleged report was VOIDED as the Planning Vote failed to have a Quorum.

109.     Both petitions were approved via a "Constructive Approval " as the Board failed

to file a timely valid "REPORT" as required by statutes MGL chapter 81 sections 81 E, F

& G.

110.    On March 20, 2012 a Joint Finance Committee Planning Board meeting was held

to discuss and Vote on Town meeting Articles: Article 37: To see if the Town will vote to

amend and add to, update and revise the "Official Map" of the Town of Wilmington,

dated January 1, 1973, prepared for the Planning Board by the Engineering Department

and adopted by the Town of Wilmington under Article 17, of the Warrant for Special

Town Meeting of June 25, 1973, and recorded at the Middlesex North Registry of Deeds

on August 20, 1973, in Book of Plans M, Plan 712, to show the existing private way,

known as Poplar Street and laid out by the board of surveyors and shown on a plan of

land recorded at the Middlesex North Registry of Deeds in Plan Book 26, Plan 36 as

Wilmington Gardens Addition; pursuant to Massachusetts General Law Chapter 41,

Sections 81 E, F & G. Poplar Street – From the intersection of Walnut Street and Poplar

Street a distance of 239 feet more or less southerly, from lot number 191-196 inclusive as

shown on subdivision plan, entitled Wilmington Gardens Addition dated June 12, 1909

and recorded at the Middlesex North registry of Deeds at Plan Book 26, Plan 36.Provided

said map has been lawfully adopted, maintained and is still valid; or take any other action

related thereto. As Petitioned for by Mark Nelson and others Resident, M. Nelson, 6 Polk

Street, said he obtained a copy of an alleged Planning Board report so he responded and

sent a letter to the Finance Committee. He asked if they all had received his letter. They

had not. C. Hamilton told Finance Chair, J. Doherty, the Planning Board did not receive

any information M. Nelson provided. She said the report Mr. Nelson is calling "alleged"

was an action taken at a Planning Board meeting, recorded with the Town Clerk and

submitted to the Board of Selectmen. M. Nelson referred to his article and said he would

like Poplar Street added to the Official Map so he could obtain an occupancy permit for a

house he has constructed there. He said he has been trying to obtain an occupancy permit for the past eight years. He said the first report is about Poplar Street, and Ms. Hamilton added two sections of the law to the report which were not part of his article. He said if you look further, Ms. Hamilton implies no plan was submitted. M. Nelson said that part of the report is a misrepresentation. He said in the report Ms. Hamilton continues that plans have not been reviewed. M. Nelson said Ms. Hamilton was on the Planning Board at the time and signed the plan that was submitted.

M. Nelson pointed out that Planning Board member, B. Corrigan, abstained from the vote in the minutes. He asked Planning Chair, M. Sorrentino, if he knew there is a pending litigation and said the March 20, 2012

Page 9 Planning Board sued M. Nelson and the Board of Appeals. M. Nelson said he has been trying to get this law suit dismissed for the past twelve years. He asked Planning Board member, A. Yurek, if she knew that she was suing him. M. Nelson read the law suit court references. He accused two members of being prejudiced which would leave only two members on the Planning Board who could vote. C. Hamilton pointed that M. Nelson submitted plans, which were approved for Poplar Street. The length of the road he is asking to be included on the map exceeds the length of the roadway included in the original submission. The excess length that M. Nelson is asking to have added to the Official Map needs a plan for roadway construction. M. Nelson asked if any of the Finance Committee members know the area. Finance Committee member, W. Wallace, said he knows the area and asked M. Nelson to explain exactly what he is looking to accomplish. Is it asking to have the street placed on the Town Map or get an occupancy permit? W. Wallace asked M. Nelson why he believes the Town is not putting the street

on the Official Map. M. Nelson said it is either to harass him, or it is a payback because in 1998 he proved the Planning Board wrong, and Judge Kilborn rendered a decision in 2000. W. Wallace told M. Nelson he was seeing for the first time the letter M. Nelson wrote just two days ago, and it is unclear if Town Counsel has seen it. M. Nelson said it is costing his family hundreds of thousands of dollars. He said that C. Hamilton uses her signature as leverage to extort whatever she can out of his family. Town Manager, M. Caira, pointed out the last comment should be ruled out of order and only the article should be discussed. M. Caira pointed out that concerning the cost of counsel to represent the Board in litigation with M. Nelson, Town Counsel is on a fixed fee retainer. Finance member, R. Hayden, pointed out that he never received a letter from M. Nelson and there is more to the story that the Finance Committee is not aware of. R. Hayden asked for a copy of the letter that M. Nelson claimed he sent to the Finance Committee members. He said he does not know the street, and asked M. Nelson if all the roadway requirements been met. M. Nelson pointed out the streets fall under 81 FF and are exempt from subdivision control. He said the roads were built with the exception of sidewalks, which are impossible to install because of the wetlands and ledge. Planning Board Chair, M. Sorrentino, said the Planning Board disagrees with what M. Nelson's representation. M. Nelson asked if the Planning Board has visited the property within the last five years, and none have. He asked if anyone on the Finance Committee has ever seen the Official Map, and R. Hayden said they have seen pieces of it. M. Nelson said the Official Map was first adopted in 1973. As part of the statute, the Planning Board was required to file a copy with the EOCD. He wrote to find that the Department of Housing and Community Development was unable to find a copy. He said there are over 250 streets missing on the

map. The audience was made aware that the official map is being updated. Finance

Committee member, W. Wallace, said he uses the map in the back of the phone book to

find a street. M. Nelson said his streets are considered private ways. He said the Planning

Board convinced the Board of Appeals that he did not comply with the regulations. M.

Nelson pointed out that Georgetown recently updated its Official Map, and it is beautiful.

They were helped by the North Shore Planning Council. M. Nelson asked C. Hamilton if

she has as AICP designation, because planners having an AICP, like M. Vivaldi, are

sworn to a code of ethics. M. Nelson accused the Planning Board of laughing at him

because they are suing him. Resident, K. McDonald, asked M. Nelson if the litigation and

what the Planning Board is doing to him will cause K. McDonald's taxes to increase.

There were no other questions or concerns from the audience  Article 38: To see if the

Town will vote to amend and add to, update and revise the "Official Map" of the Town of

Wilmington, dated January 1, 1973, prepared for the Planning Board by the Engineering

Department and adopted by the Town of Wilmington under Article 17, of the Warrant for

Special Town Meeting of June 25, 1973, and recorded at the Middlesex North Registry of

Deeds on August 20, 1973, in Book of Plans M, Plan 712, to show the existing private

way, known as Polk Street (formerly Cedar Street) and laid out by the board of surveyors

and shown on a plan of land recorded at the Middlesex North Registry of Deeds in Plan

Book 26, Plan 36 as Wilmington Gardens Addition; pursuant to Massachusetts General

Law Chapter 41, Sections 81 E, F & G. Polk Street – From the intersection of Walnut

Street and Polk Street a distance of 527 feet more or less southerly, from lot number 274-

291 inclusive as shown on subdivision plan, entitled Wilmington Gardens Addition dated

June 12, 1909 and recorded at the Middlesex North registry of Deeds at Plan Book 26,

Plan 36. Provided said map has been lawfully adopted, maintained and is still valid; or

take any other action related thereto. As Petitioned for by Mark Nelson and others

Resident, M. Nelson, 6 Polk Street, asked again if the Finance Committee received a

copy of the Planning Board report which mirrors the other report. He read a Section of

Mass General Law 81E which says a copy of such Official Map or any change thereto

shall be furnished to the Department of Housing and Community Development. He

claims the Board never did that so the Board violated the statute forty years ago. M.

Nelson asked the Planning Board when it plans to adopt the draft revised Official Map.

There was no response. He said he applied for a building permit back in 2008 and to date

his family has spent over $40,000.00 in four years and are not allowed a building permit

because of Director Hamilton's opinion. M. Nelson said the land is in the woods away

from everything and his family maintains the roads. He said there is more than adequate

access. M. Nelson requested the Finance Committee support his two articles. He asked

how much money the Town has spent in litigation denying his family permits which they

are entitled to. M. Sorrentino said he disagrees with M. Nelson because he said M.

Nelson does not have all the facts.

J. Doherty, Finance Chair, asked M. Nelson if the two articles are approved, would it

open up the area for further development. M. Nelson answered there are two house lots

left. He said it is a shame because all his family is trying to do is provide affordable

housing. There were no other questions or concerns from the audience. The Planning

Board reconvened in Room 9 to discuss and vote – Proposed Warrant Articles for Town

Meeting.

111.    At the May 5, 2012 Annual Town Meeting, Nelson attended in Good

27

Faith and made 5 minutes presentations on both Articles and displayed several exhibits.

112.    Minutes of the Town Meeting are as follows: ARTICLE 37. (drawn #21) To see if the Town will vote to amend and add to, update and revise the "Official Map" of the Town of Wilmington, dated January 1, 1973, prepared for the Planning Board by the Engineering Department and adopted by the Town of Wilmington under Article 17, of the Warrant for Special Town Meeting of June 25, 1973, and recorded at the Middlesex North Registry of Deeds on August 20, 1973, in Book of Plans M, Plan 712, to show the existing private way, known as Poplar Street and laid out by the board of surveyors and shown on a plan of land recorded at the Middlesex North Registry of Deeds in Plan Book 26, Plan 36 as Wilmington Gardens Addition; pursuant to Massachusetts General Law Chapter 41, Sections 81 E, F & G, Poplar Street - From the intersection of Walnut Street and Poplar Street a

distance of 239 feet more or less southerly, from lot number 191-196 inclusive as shown on a subdivision plan, entitled Wilmington Gardens Addition dated June 12, 1909 and recorded at the Middlesex North Registry of Deeds at Plan Book 26, Plan 36. Provided said map has been lawfully adopted, maintained and is still valid; or take any other action related thereto.

MOTION: On motion of Mr. Nelson, and duly seconded, the Town of Wilmington voted 15 in favor 72 in opposition to approve Article 37. Motion fails for lack of two-thirds vote. (The Town Clerk failed to state that Sorrentino stood before the Vote and read the Voided report into the record)

113.    ARTICLE 38. (drawn #37 To see if the Town will vote to amend and add to, update and revise the "Official Map" of the Town of Wilmington, dated January 1, 1973, prepared for the Planning Board by the Engineering Department and adopted by the Town of Wilmington under Article 17 of the Warrant for Special Town Meeting of June 25, 1973, and recorded at the Middlesex North Registry of Deeds on August 20, 1973, in Book of Plans M, Plan 712, to show the existing private way, known as Polk Street (formerly Cedar street) and laid out by the Board of Surveyors and shown on a plan of land recorded at the Middlesex North Registry of Deeds in Plan Book 26, Plan 36 as Wilmington Gardens Addition, pursuant to Massachusetts General Law Chapter 41, Sections 81 E, F & G. Polk Street - From the intersection of Walnut Street and Polk Street a distance of  527 feet more or less southerly, from lot number 274—291 inclusive as shown  on a subdivision plan entitled Wilmington Gardens Addition dated June 12,  1909 and recorded at the Middlesex North Registry of Deeds at Plan Book 26,  Plan 36. Provided said map has been lawfully adopted, maintained and is still valid; or take any other action related thereto.

MOTION: On motion of Mr. Nelson, and duly seconded, the Town of Wilmington voted 42 in favor 36 in opposition to approve Article 38. Motion fails for lack of two-thirds. (The Town Clerk failed to state that Sorrentino stood before the Vote and read the Voided report into the record)

114.    The No Voters consisted of Town administration and family.

115.    Chairman Newhouse referred to the May 4, 2012  letter of Kimberly Saillant, Town Counsel just  prior to the Vote, which is the subject of SPR 12/258. Claiming that the Town had prevailed in  Appeals Court MARK D

NELSON vs. TOWN OF WILMINGTON & others 2011-P-0715. (This was a

misleading false statement that duly influenced voters.  05/03/2012 #9 Decision:

Rule 1:28)

116.    On September 28, 2012, the Electrical Inspector Mr. Fred Sutter signed off

Approval on the Building Permit and the Application for occupancy permit on 4 Poplar

St. 8 years after the request was made.

117.    On October 14, 2012 the Gas Inspector, Mr. Paul Raffi signed off approval on the

Building permit. 8 years after the request was made.

118.    On November 11, 2011 at 11 a.m., Inspector of Buildings Mr. John (Al)

Spaulding, did a Final walk through inspection of the Dwelling at 4 Poplar Street and did

not provide a written list on any code violations.(in May 2010 Mr. Spaulding and

Director Hamilton visited 4 Poplar Street and spoke at great length about how much the

Nelson Family had improved this entire neighborhood over the years, see Hamilton

Affidavit Polk Street)

119.    On July 7, 2011, correspondence was sent to Carol Hamilton, Planning Director:

Having stated the above, I respectfully request that you list each and every reason with

specificity as to why you refuse to sign the application for occupancy permit as first

requested in July of 2005.(no reply was received to date)

120.    On June 11, 2012, the following request was to Mr. Charles E. Boyle, Chairman,

Board of Appeals and Mr. Michael J. Newhouse, Board of Selectman, Wilmington,

Re:     Land Court Case 267499 ;( 2000) Planning Board v Board of Appeals & Mark

Nelson, And request for a copy of correspondence from Kimberly Saillant, dated May 4,

2012.

Dear, Chairmen;

I have mailed correspondence on March 26, 2012 & May 9, 2012, related to meeting and attempting to settle Land Court case 267499. This case has been pending for over 12 years and has significantly, negatively affected my family and myself all these years. I find it very troubling that my concerns go ignored and unanswered. There has been a long practiced pattern of delays, stone walling misdirection that has caused significant financial hardship by way of long draw appeals process, simply trying to utilize my family's property for its intended purpose and better the quality of life for family members. It is also very clear to me that the town has squandered significant funds over the years on town counsel, printing, postage and other associated costs denying property rights rather addressing and correcting numerous deficiencies to the process. I also have observed a long practiced town policy of selectively enforcing the manner in which permits are issued or denied.

The Planning Board was first presented an updated "OFFICIAL MAP" (The Engineering Dept. Draft revision, dated April 4, 2011) on February 7, 2012. (minutes of meeting; C. Hamilton distributed revised Official Maps. She asked the Board to review and offer any changes.) However, the Planning Board failed to do anything more than that. I have also made numerous requests for town counsel costs related to all the litigation related to my family over the years and can get not get accurate straight answer or total spent. The Finance Committee could not even get a total cost. I can assure you that we have invested well over $ 250,000.

Ms. Hamilton, Planning Director, Mr. Sorrentino, Ms. Yurek (Planning Board members) and Mr. Daniel Veerman (Board of Appeals member) should not be allowed to

31

participate in any manner or fashion with anything to do with my family's permitting process, they are all clearly prejudice and detrimental towards any resolution to pending appeals and the issuance of long sought after permits.

Both of my parents Mary & George Nelson are both 85 years old this year. George is still employed at Fay Spofford & Thorndike for over 65 years and has paid out over $ 350,000 in mortgage payments since 2004 on 4 Poplar Street and has been denied the pleasure of retiring and living in this once new house due to the lack of a Certificate of Occupancy.

I believe, all judges have a strong interest in seeing cases settled and that cases stay settled.

 Please contact me at the above listed address with your reply.

I thank you in advance for your consideration,

Mark D. Nelson,

cc:     Chief Justice, Honorable Karyn F. Scheier Land Court

        Ms. Jennifer Noonan, jennifer.noonan@jud.state.ma.us

        Michael Caira, Town Manger manager@town.wilmington.ma.us

        Charles Boyle           tlarivee@town.wilmington.ma.us

Daniel Wandell Jr. daniel.wandell@sec.state.ma.us

John Forest

Board of Assessors     boa@town.wilmington.ma.us

Town Clerk              lgolden@town.wilmington.ma.us

Office of Attorney General  ago@state.ma.us

Mr. Al Spaulding, Inspector of Buildings, aspaulding@town.wilmington.ma.us

 Members of the Board of Selectman veterans@townofwilmingtonma.com

Please provide a copy of this letter to all Board of Selectman members prior to tonight's meeting.

Mr. Michael Morris, Town Accountant acct@town.wilmington.ma.us

Pamela Mackenzie, Town Treasurer, treasurer@town.wilmington.ma.us

Mr. Michael Begonis, Police Chief mbegonis@wpd.org EMAILED and FAXED

Fax: 978-694-2045

159.     No reply has been received as of today.

160.     On June 22, 2012, correspondence was sent to, Mr. John Spaulding, Inspector of Buildings, Re: Request for Certificate of Occupancy 4 Poplar St.

Dear Mr. Spaulding, I respectfully submit the following documents in support of this request for a Certificate of Occupancy permit to issue for 4 Poplar St.

        Please me at nelinc@verizon.net  and I will help facilitate for a final resolution. If you need any additional information, please contact me at your earliest convenience.

161.     On August 15, 2012, Inspector Spaulding responded, from and including: Friday, June 22, 2012, To, but not including: Wednesday, August 15, 2012,

It is 54 days from the start date to the end date, but not including the end date, 14 days after required 30 days.

33

121.   The August 15, 2012 reply of Spaulding does not state any code or zoning violations.

122.   On August 22, 2012 an appeal was filed with the SBBRS, Failure to Act within 30 days, and failed to issue Certificate of Occupancy and a request to issue under 780CMR 120.1 & 120.3.

123.   On August 23, 2012, I received a phone call from Ms. Patricia Barry, Clerk, Building Code Appeals Board; She and Mr. Tom Riley spoke for approximately 25 minutes at great length about the application.

124.   On August 29, 2012, much to our surprise the application submitted was returned and we were instructed to amend the application and resubmit it.

125.   On September 4, 2012 the State Building Code Appeals Board, received the amended, application on appeal.

126.   On October 4, 2012, the hearing was held on this application Mr. Nunnemacher, abstained from the hearing related to The Town of Millbury, just prior to the Nelson matter and was taken out of order on that days agenda.

127.   Nelson notices Mr. Nunnemacher out in the hall speaking with town counsel Saillant, During the lengthy discussion during the hearing, Nelson submitted a USB drive containing 236 items including photographs and documents as an Exhibit and handed it to Mr. Harry Smith, Board member along with the a certified copy of the 1929 Town of Wilmington By Laws, Building Code along with house plans certified plot plans and numerous other documents. (Both the USB are not listed as Exhibits however they were submitted into evidence.),  After the hearing Mr. Smith stated to Nelson, "I bet you feel

34

like a victim?" Mr. Smith then went on to say "Well you shouldn't- you brought this all

upon yourself".( I was very shocked to hear those comments),   During the hearing

Attorney Saillant made numerous false statements and misled the Board every step of the

way,    After the hearing Nelson noticed Attorney Saillant, Spaulding and the Town

Millbury exiting the Building and talking at great length.

128.    Chairman of the Planning Board Michael Sorrentino and Director of Planning and

Conservation, Ms. Carol Hamilton has failed to complete and pass the Conflict of Interest

Laws online Training Program.

129.    On November 19, 2012, the Nelson Family received the Board's decision on

Appeal, This New Appeal to Superior Court is within the 30 days of receipt of the

Board's decision and complies with MGL c.30A, section 14.

130.    On November 20, 2012, the Board Clerk mails Nelson, copies of Exhibits and

other documents generated from the hearing. (including a compact disk of the audio

recording of the hearing to be transcribed as evidence), Missing from the Exhibits are a

USB drive containing 236 items including photographs and documents as an Exhibit and

handed it to Mr. Harry Smith, Board member along with the a certified copy of the 1929

Town of Wilmington By Laws, Building Code along with house plans certified plot plans

and numerous other documents.

131.    The Plaintiff did not receive a fair hearing and believes that the Board did not act

in good faith and that their decision was a violation of constitutional provisions, made in

error of law and contrary to what is allowed within the State Building Code and in excess

of their statutory authority, by demanding the Planning Department signature prior to the

issuance of the Certificate of Occupancy.

II.      The history between Plaintiff Nelson and Wilmington.

132.    Since the 1955, the Nelson's have resided in Wilmington.

133.    In the early 1980's Mark Nelson began to purchase vacant land and build and sell
new homes.

134.    In 194 the Nelson family saw an opportunity to attempt to build affordable new
homes for their immediate families in the area off of Walnut Street, Wilmington.

135. In 1987 a small group of builders in Wilmington met at 20 Middlesex Ave. in
Wilmington and declared that no builder outside their select group should build new
homes in Wilmington.

136.    The Nelson's were and are not part of that select group of favored  individuals,
who's permit process is streamlined for their success and profit.

137.    In 1990 the Town hired a new Town Manager and he appointed numerous new
administration and board and commission members.

138.    Since Mr. Caira's appointment the Nelson family has made every attempt to
follow the Town's direction and desires, much to the detriment of the entire Nelson
Family.

139.    The Nelson family has been forced to file over 55 appeals of decisions made by
numerous various authorities contrary to established property and civil rights.

140.    Wilmington has demonstrated a callous and insensitive
disregard for the Plaintiff's safety and both property and civil rights.

141.    The Nelson family has been subjected to intimidation by agents. officers, and employees of Wilmington, a lack of protection under the laws, and threats and coercion.

142.    Wilmington's acts and omissions have resulted in the significant negative financial losses of the Plaintiff and created a mental and physical duress.

143.    A scheme to block, harass, delay and prevent the Nelson Family from building new affordable homes for family members and occupying those homes while allowing a small group of individuals to control a monopoly on the issuance of New Single Family house Building Permits creates a long history of Wilmington placing its interests above the safety of the public at large and Nelson and his family particularly.

III The history of intimidation by Wilmington against the Plaintiff and others.

144.    Wilmington and its agents have attempted to prevent the Plaintiff from exercising any of his constitutional property rights in Wilmington.

145.    Michael Sorrentino, acting as a member of the Wilmington Planning Board has loudly threatened to forcefully eject the Plaintiff from a Planning Board meeting when the Plaintiff sought to discuss the lack of Planning Board compliance with the laws. Sorrentino stated the Plaintiff's Father George Nelson did not have long to live and requested Nelson to "Sue him".

146.    In conjunction with the Plaintiff's sale of 3 Poplar Street and upon information and belief, the buyer was told that she would be evicted from her new home by Mr. Paret.

147.    In conjunction with the Plaintiff's Superseding Order of Conditions from the DEP, upon information and belief, Sgt. Rooney armed and in uniform while chairman of the Board of Selectman demanded that nelson stop the construction of Walnut Street in 1996.

37

148.    As a consequence, the actions or lack of actions of certain town officials

To perform their duties in accordance with the laws, by laws rules and regulations in full

transparency has had a chilling effect on the administrative process for over 32 years.

III.    Recent History between Plaintiff Nelson and Wilmington Administration

149.    On June 23, 2011 the Plaintiff writes Gregory W. Sullivan, Inspector General

Office of the Inspector General, One Ashburton Place Room 1311, Boston, Ma. 02108

and requests an investigation into the Town of Wilmington Administration and Michael

Caira. (EXHIBIT A annexed hereto)

150.    Town Manger Michael Caira retires September 30, 2012 and Jeffrey Hull

(assistant Town Manger 1987) becomes Town Manger October 1, 2012.

151.    Michael Caira immediately gets himself appointed to The Office of the Inspector

General Council and is currently the "Chair". . (EXHIBIT B annexed hereto)

152.    On October 2, 2014, the Plaintiff writes Federal Bureau of Investigation, One

Center Plaza Suite 600, Boston, MA 02108, Phone: (617) 742-5533, E-mail:

Boston@ic.fbi.gov., Re:    Request to Investigate, Carole Hamilton, Planning Director

Town of Wilmington Ma. (EXHIBIT C annexed hereto)

153.    Two days later Carole Hamilton announces her retirement.

154.    Valerie Gingrich is hired as new Planning/Conservation Director starting Jan 1,

2015.

155.    On or about June 16, 2016, Nelson, on behalf of the then record title holders, the

Plaintiff, filed an 3 applications, 1 for the issuance of a certificate of occupancy with the

Town of Wilmington Building Inspector for 4 Poplar Street, 2 Foundation Only Permit

for 6 Sharon Street and 3 a Foundation and Building Permit for 12 Polk Street.;

156.    The Building Inspector rejected the applications in June 21, 2016 letter, denying

such request.

149.    On June 23, 2016 the Plaintiff writes Ms. Judith O'Connell Chairwoman Board of

Selectman, 121 Glen Rd.   Town Hall   Re:    MGL Chapter 41 Section 23B, Request to

Investigate Room 5. . (EXHIBIT D annexed hereto)22 pages

150.    On or about  June 30, 2016, Nelson as appealed the decision of the Building Inspector to

the Town of Wilmington Zoning Board of Appeals by filing 3 applications in accordance

with the Town of Wilmington Town Clerk in accordance with MGL c. 40A, s. 15.

151.    The appeals was duly and properly filed on or about June 30, 2016 @ 4;40 PM by Mark

Nelson Agent.

152.    On June 30, 2016 @ 4:40 PM Nelson filed Application/Petition with the Board of

Appeals of the Town of Wilmington and the application was Date and Time Stamped in

the Town Clerks Office.

153.    The Zoning Board of Appeals Secretary Toni Larivee rejected the appeals in bad faith,

claiming among other matters that the Board of Appeals  had no authority.

154.    October 9, 2016 marks 100 days since the filing of the application to the Zoning Board of

Appeals; no hearing has been held by the Zoning Board of Appeals on the appeal;

155.    No Decisions of the Board has been filed in the Office of the Town Clerk within 100

Days of the filing of the Application/Petition on or before October 9, 2016;

156.    On or about October 9, 2016, no extension of time for the Zoning Board of Appeals to

render its decision occurred;

157.    The deadline had in fact expired without action by the Board of Appeals;

158.    On or about October 12, 2016, Notice of Constructive Approval was served by Nelson

by prepaid first class certified mail return receipt requested and received by the Office

of the Town Clerk on October 14, 2016 (green card returned) and filed within 14 days

after the 100-day time frame expired. Included in that notice was a statement that appeals

if any shall be taken within 20 days;

159.   The Town of Wilmington and parties of interest then had 20 days from this Notice of

Constructive Approval to file an action in the Land Court to appeal the issuance of the

Constructive Approval Certificate;

160.   20 days has expired and as of November 3, 2016 and no appeal pursuant to (M.G.L.

c. 40A s.17) has been taken and filed in the office of the Town Clerk;

161.   On November 16, 2016, Mark Nelson received an email from the Town Clerk Sharon

George with a letter dated November 2, 2016 stating that the "Board of Appeals" had

"rejected" the application. (page 1 paragraph 1 & page 2 paragraph 4). This was the first

correspondence stating such.

162. A Constructive Approval for the issuance of a Certificate of Occupancy, Foundation

Only Permit and Foundation and Building Permit occurred and was Final;

163.   On or about November 23, 2016, legal counsel on behalf of Nelson as Agent sent to

the Town Clerk by overnight a mail signed receipt requested a demand that the Town

Clerk sign the "CERTIFICATE OF CONSTRUCTIVE APPROVALS" ;

164.   Nelson, on behalf of the Petitioner, made written demand upon the Town of

Wilmington to execute and to return a Certificate of Constructive Approvals, but the

town has refused and continues to refuse to sign and return the Certificates in accordance

with the law, see;

165. Sharon George, as the Town Clerk for the Town of Wilmington, has thus failed to perform

her official duties as a Town Official;

166. At no point in this process did Nelson receive either a fair hearing or anything satisfying the minimum concept of fairness;

167. Based on the foregoing, this Court has the statutory authority to review the Petition for Writ of Mandamus under M.G.L. c. 249, § 5 and to Order the Town Clerk to Issue the Certificate of Constructive Approvals;

168. The Plaintiff as petitioner sought an order from the Land Court Honorable Court pursuant to M.G.L. c. 249, § 5 compelling Sharon George as Town Clerk for the Town of Wilmington to forthwith issue such a certificates of Constructive Approval.

169. The Plaintiff Appealed the Land Court denial of Constructive Approvals to the Appeals Court.

170. The Plaintiff hired Jeffrey S. Baker and Associates and Blatman, Bobrowski & Haverty LLC Attorneys at Law at a cost of over $ 80,000 to use the properties for the highest best use.

171. A single Justice of a 3 Panel Board determined that  If the trust disagreed with the ZBA's position, it could have promptly sought mandamus relief to compel the ZBA to accept the application for filing and could thereby have obtained an early judicial determination of whether the ZBA's position was correct. Neli Ridge, LLC v. Town Clerk of Wilmington , 93 Mass. App. Ct. 1109 (Mass. App. Ct. 2018)  May 4, 2018 and LAND COURT  MISC 16-000736 August 16, 2017, Middlesex, ss., FOSTER, J.;

172. From 2005 – 2017 the Town prevented the Plaintiff from renting out the garage for $ 1500 per month x 12 months x 12 years equals $ 216,000 of lost income from rent.

173. On August 14, 2017 the Board of Selectman voted to authorize Hull to enter into an "AGREEMENT REGARDING 4 POPLAR STREETWILMINGTON MASSACHUSETTS" agenda and minutes  (EXHIBIT E annexed hereto)

41

174.    "AGREEMENT    REGARDING    4    POPLAR    STREET    WILMINGTON
MASSACHUSETTS"    (EXHIBIT F annexed hereto)

175. On March 14, 2016, I filed a complaint with the DHCD against Spaulding, Hull and Gingrich.
(EXHIBIT G annexed hereto)

176. On October 1, 2014, I request assistance from the Attorney Generals Office regarding
Federal Civil Rights Violation against the town of Wilmington. (EXHIBIT H annexed
hereto)

177. At a private meeting with Principal Assessor Karen Rassias, Spaulding entered the room sat
down and stated to the Plaintiff that "if he had my money he would burn his".

178. On 3 separate occasions between December 2018 and march 2019, Spaulding, unannounced,
after hours and in his private vehicle visited 12 Polk Street and threatened to fine the Plaintiff
$ 300 per day. Town Counsel Jonathan Silverstein accompanied Spaulding on 1 occasion. (all
visits have been recorded on security cameras)

179. The Plaintiff had an agreement to sell 6 Sharon St. to a local builder for $ 235,000, Spaulding
told the builder he would not issue a building permit for the property because "NELSON"
owned it. The sold to an abutter for $ 100,000 whereby the Plaintiff lost $ 135,000.

180. As a direct result of the Town blocking the issuance of a Building permit for 12 Polk St., since
2008 the Plaintiff has lost over $ 40,000 in apartment and hotel rent to provide safe living
environment.

181. On July 1, 2019 the Plaintiff mailed a Chapter 258 Presentment letter, the Town never
responded. (EXHIBIT I annexed hereto)

## CLAIMS

## COUNT ONE

Action for Chapter 258: CLAIMS AND INDEMNITY PROCEDURE FOR THE

COMMONWEALTH, ITS MUNICIPALITIES, COUNTIES AND DISTRICTS AND

THE OFFICERS AND EMPLOYEES THEREOF

182. The Plaintiff realleges all foregoing paragraphs.

183. Public employers shall be liable for injury or loss of property or personal injury or

death caused by the negligent or wrongful act or omission of any public employee while

acting within the scope of his office or employment, in the same manner and to the same

extent as a private individual under like circumstances.

184. The Plaintiff has lost over $ 301,300 by the Town employees blocking the sale of 4

Poplar St. for more than 12 years.

185. The Plaintiff has lost over $ 135,000 by the Town employees blocking the sale of 6

Sharon St. for more than 10 years.

186. The Plaintiff has lost over $ 140,000 by the Town employees blocking the use of 12

Polk St. for more than 12 years.

## COUNT II

## COMPLAINT FOR DECLARATORY JUDGMENT

## PURSUANT TO G.L. c. 231A

187.    The Plaintiff realleges all foregoing paragraphs.

188.   The Plaintiff has a high likelihood of success on the merits of his claims.

189.   This case arises out of an actual case or controversy.

190.   The Plaintiff therefore requests a declaratory judgment finding the Town of Wilmington's failure to properly train and educate various town administration is unconstitutional under the Due Process and Equal Justice clauses of the United States Constitution and the Constitution of the Commonwealth of Massachusetts.

191.   The Plaintiff further requests a declaratory judgment as to all of the rights. liabilities, and obligations of the parties, including the determination that the denial of the right to sell  his properties at fair market value and the blocking of building permits has posed a substantial health risk to the Plaintiff's health, liberty and their pursuit of happiness and that this interference and denials are unlawful.


## COUNT III

### Fraud/Material Misrepresentation

192..   The Plaintiff realleges all foregoing paragraphs.

193.   The Plaintiff has a high likelihood of success on the merits of his claims.

194.   The Defendants by their actions as detailed above did fraudulently induce the Plaintiffs to follow their demands.

195.   The Defendants made false statements of material fact to Plaintiffs regarding their intentions concerning the "Use and ales of  properties.

196.   The Plaintiff relied on these false statements misdirection to his detriment.

197.    The Defendants knew, or should have known that at the time they unlawfully interfered with the sale and best use of his properties and that they had no intention of ever issuing any permits ever to the Plaintiff.

198.    As a direct and proximate result of the above Defendants' conduct the Plaintiff has suffered significant damages.


## COUNT IV

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

199.    The Plaintiff realleges all foregoing paragraphs.

200    The Town intended to and continues to inflict emotional and financial distress on the Plaintiff for decades now.

201.    The Town's conduct and statements to and about Nelson is and has been extreme and outrageous.

202.    The Town actions have caused and continue to cause Nelson's extreme emotional and financial distress.

## COUNT V

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

203.    The Plaintiff realleges all foregoing paragraphs.

204.    The Town inflicted emotional and financial distress on Nelson.

205.    The Town's actions were negligent.

206.     The Plaintiff has suffered physical harm resulting from the Town's actions which caused the Nelson emotional and financial distress.

207.     Since the Town's actions, the Plaintiff have developed a fear of attending public hearings which are essential to hi ability to provide housing for himself and earn any income.

## COUNT VI

## DEFAMATION OF CHARACTER AND SLANDER

208.     The Plaintiff realleges all foregoing paragraphs.

209.     Defendant Town Manager, Jeffrey Hull verbally made a false and defamatory, slanderous statement at open 2017 Town Meeting "When Mr. Nelson complies with the requirements of development, then we will accommodate him, but there have been a number of legal cases that he has pursued against the town, and that's about as far as I can go."

210.     The Defendant by his actions and statements as detailed above did unlawfully infringe on the Plaintiffs' equal rights to make a living.

211.     As a direct result of the above Defendants, conduct the Plaintiff suffered damages.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory and exemplary damages, plus interest, costs and attorney fees.

COUNT VII

MASSACHUSETTS CIVIL RIGHTS ACT

M.G. L. c. 12, § 11, H & I

212.   The Plaintiff realleges all foregoing paragraphs.

213.   The Defendants by their actions, as detailed above, did by threats, intimidation and/or coercion interfere with the Plaintiffs' rights as secured by the Constitution and laws of the United States and secured by the Constitution and laws of the Commonwealth in that they did interfere with the Plaintiffs rights and privileges in violation of G. L. c. 12, §§ 11H  & 11I.

214.   As a direct and proximate result of the Defendants' conduct, the Plaintiff suffered damages.

215.   The Defendants by their acts or those for which they are liable, interfered or attempted to interfere by intimidation and threats as well as coercion and collusion against Plaintiff Nelson's exercise or enjoyment of rights secured by the constitutions or laws of the United States and the Commonwealth of Massachusetts.

216.   The Defendant's thereby violated the Massachusetts Civil Rights Act, M.G.L. c. 12.

WHEREFORE, the Plaintiffs demand judgment against the Defendants for compensatory and exemplary damages, plus interest, costs and attorney fees.

47

## COUNT VIII

## EQUAL PROTECTION

217.    The Plaintiff realleges all foregoing paragraphs.

218.    The Defendants have intentionally and wrongfully singled out the Plaintiff's for

adverse treatment. Such adverse treatment includes:

A.      failing to inspect in a accordance with time standards.;

B.      wrongfully failing to provide proper direction to the Plaintiff;

C.      failed to perform their duties as administrators for the Town;

219.    The Defendants failed to take the described actions against the Plaintiff though

they did not take positive action against others similarly situated.

220.     There was no rational basis for the Defendant's treatment of the  Plaintiff.

## COUNT IX

## Civil Rights Action under 42 U.S.C. § 1983]

221.    The Plaintiff realleges all foregoing paragraphs.

222.    This case seeks to protect and vindicate fundamental constitutional rights. It is a

civil rights action brought under the Fifth and Fourteenth Amendments to the United

States Constitution and 42 U.S.C. § 1983, challenging Defendants' restriction on

Plaintiffs' right to DUE PROCES and RIGHT TO USE PRIVATE PROPERTY.

2. Plaintiffs seek a declaration that Defendants violated their clearly established

48

constitutional rights as set forth in this Complaint; a declaration that Defendants'

restriction on Plaintiffs violates the U.S. Constitution and 42 U.S.C. § 1983 as set forth

in this Complaint; a preliminary and permanent injunction enjoining the enforcement of

Defendants' right to use Private Property restriction as set forth in this Complaint; and

nominal damages for the past loss of Plaintiffs' constitutional rights. Plaintiffs also seek

an award of reasonable costs of litigation, including attorneys' fees and expenses,

pursuant to 42 U.S.C. § 1988 and other applicable law

## COUNT X

### Injunctive Relief

### Against Wilmington

223.    The Plaintiff realleges all foregoing paragraphs.

224.    The Plaintiff has a high likelihood of success on the merits of their claims.

225.    There is little likelihood of harm to Wilmington if injunctive relief is allowed.

226.    The equities (including but not limited to the long relationship between the

Plaintiff and the Town and Commission) favor the entry of injunctive relief.

227     For the foregoing reasons, the Plaintiff requests preliminary and permanent

injunctive relief prohibiting and restraining Jeffrey Hull, in his Official Capacity as Town

Manger, effective immediately, that you are forbidden to have any involvement

whatsoever or to enter in or upon the private properties or pending litigation with Nelson

owned properties  known as  Polk Streets located within the Town of Wilmington and

within the Commonwealth of Massachusetts: necessitates the entry of injunctive relief.

49

228.    For the foregoing reasons, the Plaintiff requests preliminary and permanent injunctive relief prohibiting and restraining Valerie Gingrich, in her Official Capacity as Planning/Conservation Director, effective immediately, that you are forbidden to have any involvement whatsoever or to enter in or upon the private properties or pending litigation with Nelson owned properties  known as  Polk Streets located within the Town of Wilmington and within the Commonwealth of Massachusetts: necessitates the entry of injunctive relief.

229.    For the foregoing reasons, the Plaintiff requests preliminary and permanent injunctive relief prohibiting and restraining John Spaulding , in his Official Capacity as Town Inspector of Buildings & Zoning Enforcement Officer, effective immediately, that you are forbidden to have any involvement whatsoever or to enter in or upon the private properties or pending litigation with Nelson owned properties  known as  Polk Streets located within the Town of Wilmington and within the Commonwealth of Massachusetts: necessitates the entry of injunctive relief.

## REQUESTS FOR RELIEF

The Plaintiff requests that this Court enter the following the relief:

1.    Award the Plaintiff the right to use his property at 12 Polk Street and issue a building permit for a single family home immediately.

2.    The entry of any and all necessary findings that this Court may make in accordance with the law.

3.      A Declaratory judgment as to all of the rights, liabilities, and obligations of the

parties, including the determination that the threats and intimidation on the Plaintiff is

unlawful and poses an ongoing significant financial burden on the Plaintiff.

4.      An order granting Plaintiff attorney's fees and costs;

5.      Award any and all damages that the Plaintiff may be entitled to;

6.      Any other relief that this Court deems proper.

Jury Demand

The Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted and signed under the pains and penalties of perjury as a verified

complaint.

Mark D. Nelson   Pro Se

12 Polk St

Wilmington, Ma. 01887

DATE ;  July 4, 2020

Ph: 978.657.0011. Fax  Only

E-mail:  nelson.p.1313@ gmail.com

# EXHIBIT A

M Gmail                                    Mark Nelson <nelson.p.1313@gmail.com>

# Request to Investigate the Town of Wilmington Administration
3 messages

**Mark Nelson** <nelson.p.1313@gmail.com>              Thu, Oct 2, 2014 at 4:13 PM
To: Boston@ic.fbi.gov

June 23, 2011

                                                              6 Polk St.
                                                              Wilmington, Ma. 01887

Gregory W. Sullivan, Inspector General
Office of the Inspector General
One Ashburton Place
Room 1311
Boston, Ma. 02108

Re:      Town of Wilmington, Administration

Dear Mr. Sullivan;

        After reading the Boston Globe article on June 22, 2011, about Mr. John
Barranco and the Merrimac Education Center, I realized that you and your office are
the last best possible resolution to my family and my nightmares with the town of
Wilmington and the administrators and officials that control its' government.
        Since Mr. Michael Caira assumed the position of Town manager in July of
1990, my family and I have been compelled to file numerous appeals to a higher
authority to obtain any and all permits associated with the construction of new homes
and roads to access property owned by my family. Not only has this resulted in a
substantial financial hardship to us but to the taxpayers of the town of Wilmington and
the Commonwealth of Massachusetts, for court costs and legal fees. With the biggest
benefactor being town counsel, receiving hundreds of thousands of dollars over the
years to defend bogus opinions, rendered at the direction of various department heads.
This is an ongoing fact that cannot be ignored. In Wilmington, unlike other
communities the town manager appoints almost every critical position and in my
opinion, controls that position with his direction.
        The family owned properties are located in the western part of Wilmington off
route 62 near the Burlington town line. Each parcel/lot is shown on a plan recorded at
the Middlesex North Registry of Deeds on a Plan recorded in 1909. (Plan Book 26

Plan 36) These properties have a grandfathered protection pursuant to MGL, c. 40a, section 6 and MGL c. 41 section, 81FF.

Appeals of various town decisions have resulted in orders issued from the Commissioner of the DEP, the State Building Board, the Appellate Tax Board, the Land Court, Superior Court, the Appeals Court and the Supreme Court. All at a great expense and very time consuming process that has placed tremendous stress on every family member.

The property addresses are 5 Polk St., 6 Polk St., 12 Polk St., 6 Sharon St., 8 Sharon St., 9 Walnut St., 12 Walnut St., 3 Poplar St., 4 Poplar St., & 4 Page St. These properties were intended to provide affordable housing for family members, however due to attorney fees and court costs various properties had to be sold to pay those costs.

In February of 2008, I contacted Attorney Mr. Peter Brooks of Seyfarth Shaw to make a Public Records request on the Town of Wilmington, to obtain any and all emails sent or received by the town of Wilmington related to me and my family since January 2000. From the onset Mr. Brooks did not apprise of the conflict that existed between Attorney Sally L. Adams of Seyfarth Shaw and her representing the Merrimac Education Center. The town of Wilmington 's inability to locate the emails handled by the town Contractor, the Merrimac Education Center as the town's Intranet provider has resulted in MARK D. NELSON vs. TOWN OF WILIMINGTON & others FAR-19883. SJC

In May of 2008, I attempted to obtain a building permit for 12 Polk St., this application was denied by the then building inspector Mr. Daniel Paret. Mr. Paret resigned within weeks of that decision under very suspicious circumstances. The only option was to appeal that decision, (as my family has had to do in the past) to the town Board of Appeals. At the Board of Appeals the permit was half approved but half denied, and again an appeal was filed in the Land Court. The land Court upheld the Board of Appeals largely in part based on the misrepresentations of Ms. Carole Hamilton, Planning/Conservation Director (in violation of MGL c. 268 section 1 & 1a). In my opinion Ms. Hamilton is currently a very large factor in the abuse of authority currently reigning supreme at the Town Hall. This matter is now MARK D NELSON vs. TOWN OF WILMINGTON & others, 2011-P-0715, Appeals Court.

On May 30, 2008, the town of Wilmington and I entered into a "Settlement Agreement" to hopefully resolve Land Court Case, No. 2002 misc. 284416, for property known as 8 Sharon St. A building permit was finally issued after more than 20 years of hearings and appeals. A purchase & sale agreement was entered into in September of 2009, with a closing date of November 30, 2009. The sale did not finalize until April 14, 2010, due to Ms. Carole Hamilton's failure to sign off on the application for Occupancy permit and the town of Wilmington's breach of the "Settlement Agreement". Her failure and the failure of Mr. Anthony Pronski, Director of Engineering and Mr. Donald Onusseit, Superintendent of Public Works resulted in the buyer filing a complaint against me in Middlesex Superior Court, Hawat v Nelson case no. 2010-14. The town Principal Assessor, Mr. Humphrey Moynihan, without just

cause reassessed the property without the benefit of the occupancy permit on January 1, 2010. That reassessment is now Appellate tax Board case. No F 310035, again a very time consuming costly affair.

In March of 2004, a building permit was issued for 4 Poplar St. This was the result of a "Settlement Agreement" from a land Court Case and a Superior Court Case. The house was completed in 2005 and signatures were quickly obtained on the application for occupancy until it reached the desk of Ms. Carole Hamilton, Planning/Conservation Director. With Ms. Hamilton's appointment to director in 2004, new homes now needed the signature of the director on the application for occupancy. Without providing any specific reason why she refused to sign the application, 4 Poplar to this day is still without the benefit of an occupancy permit. However the Principal assessor Mr. Moynihan reassessed the property and there is now 2 cases with the Appellate Tax Board, cases no. F 310076-10 & F310892-11. This property is owned by my 84 year old father who is still employed as the Head Electrical Engineer at Fay Spofford & Thorndike. This was intended to be a retirement home, but he is not allowed to occupy, rent or sell this property.

In 2001 as the result of a 32 page decision by Chief justice, Mr. Peter Kilborn as building permit was issued for 3 Poplar St. Prior to the issuance of the building permit the then planning director insisted that the building inspector Mr. Paret demand that $ 24,835 be placed in an escrow account prior to issuing the permit. These funds were allegedly to construct sidewalks on Walnut, Polk & Poplar Streets, without any legally authority to demand such funds. The town still holds these funds and will not release these funds that belong to my 84 year old mother Mary Nelson.

In April 2003, a building permit was issued for 4 Page Street and again the then planning director insisted that the building inspector Mr. Paret demand that $ 33,593 be placed in an escrow account prior to issuing the permit. These funds were for drainage that cannot be installed in solid ledge and for a paved turn around that would have taken off part of the front porch and posed a significant safety problem with snow removal. To date the town still will not release approximately $ 20, 310.57. The town still holds these funds and will not release these funds that belong to my 84 year old father George Nelson.

Apparently the actions of various town administrators and officials have successfully manipulated Massachusetts General Laws, rule & regulations as well as local bylaws rules and regulations to selectively enforce what they want for whom they want. It has been my experience over the years that it is not what is being permitted but whom it is being permitted to.

Having stated the above, please consider the facts listed below.

Town manger Mr. Michael Caira was appointed Town Manager in June 1990, without having any prior experience as a Town Manager. One of the first matters he addressed was to subdivide his parent's property at 188 Chestnut St. by submitting a

plan to the Planning Board, whereby the Planning board failed to act and the town clerk stamped the plan approved by statute. Please note that Ms. Carole Hamilton was a member of that Planning Board, see M.N.R.D. plan book 176 plan 87. Mr. Caira, maintains Mr. Alan Altman, Town Counsel (1960-2001) Assistant town manager Mr. Jeff Hull ( 1988-2011), maintains Town Accountant, Mr. Michael Morris (1990-2011), maintains Ms. Carole Hamilton, Planning Board (1983-1999), hired Ms. Lynn Duncan as Planning Director (1990-2004), hires Ms. Carole Hamilton, Planning/Conservation director (2004-2011) maintained Mr. James Ficociello, Board of Health (1990-2011), Mr. James Stewart became Town Moderator, (1990-2011), appointed Kay Scanlon, Town Clerk,

Appointed Mr. Humphrey Moynihan, Principal Assessor, (1992-2011), appointed Mr. Charles Boyle to Board of Appeals (since 1992-2011), appointed Michael Woods, Superintendent of Water Department (1994-2011), appointed Fire Chief, Mr. Daniel Stewart (1993-2008, brother of town Moderator) appointed  Director of Library, Ms. Christina Stewart (1996-2011, wife of Fire Chief), appointed Building Inspector, Mr. Daniel Paret (1995-2008) , hires Mr. Donald Onusseit, Superintendent of Department of Public works (1997-2011) appoints Mr. Michael Sorrentino, Planning Board (1999-2011) appoint Mr. Scott Garrant, Planning Board (1997), hires Mr. Anthony Pronski, Director of Engineering (2000-2011) appoints Ms. Ann Yurek, Planning Board (2000-2011), appoints Ms. Randi Holland, planning Board (2002-2011) Appoints Ms. Elizabeth Sabounjian and Ms. Jane Williams vale, Board of Health (2002-2011) appoints Mr. Joseph Balliro Jr., Water & Sewer Commission ( 2002-2011) appoints Mr. James Banda Jr. and Brian Corrigan, Planning Board (2006-2011) Mr. Ciara's salary in 2006 was $ 109,017 on July 1, 2009 a new 3 year contract was in the amount of $ 140,000 a year for 2010,2011 & 2012 a $ 30,000 a year increase as he announced his plans to retire fiscal year 2012, with starts July 1, 2011. Mr. Caira is also rumored to control all the proceeds from the sale of property owned by the Sons Of Italy at 37 Ballardvale street Wilmington.

In 2003 the Board of selectman does not rehire Mr. Michael Newhouse as Town Counsel but hire Deutch Williams of Boston Ma.

Mr. Michael J. Newhouse is elected to Board of selectman 1995-2001, is appointed Town Counsel 2001, 2002, 2003, reelected to Board of selectman 2004-2011. He and Mr. Louis Cimaglia also a member of the Board of selectman and recent appointment as Veterans Agent, founded a non-profit organization Mass-Local Heroes. Over the last couple of years Attorney Newhouse has set up several LLC's, with several local contractors and builders where property that has never been buildable in previous years all of a sudden is buildable. Properties are bought at a lower price, permitted very easily and sold off for substantial gain. It appears lately that a new private financier has lent the funds to develop these lots. A search of the Secretary of State Corporations shows these businesses'. The building permits issued clearly show

the dates signed off on applications, permits issued and occupancy permits issued. The assessor records show that these properties are not taxed until sold and the registry of deeds show the prices paid and sold for as well as the attorney's and lenders involved. It is all the same people.

As clearly shown above, the Town Manager has complete control over every department, commission, committee, board and department head with the exception of the Board of Selectman and town moderator. It has been my experience that if an individual is not in the loop a very difficult time can be expected. Over the last several years the Planning/Conservation director, Ms. Carole Hamilton has controlled, all of planning board, conservation commission, engineering department, department of public works, board of health, building inspector, board of appeals and board of assessors as anything relates to new construction and development. A few years back the town adopted a storm water management bylaw contained in the Inhabitants of the Town of Wilmington By Laws, and in doing so provided Ms. Hamilton with the lone decision maker. From my observations around town and personal experience in dealing with Ms. Hamilton, it has become very clear to me that she selectively enforces these bylaws at every level. And basically there is a select group of favored builders and developers that have an expedited streamlined permit process, while others like my family are subject to a much scrutinized review that usually ends in an appeal process. Again at a great expense and dis service to applicants and taxpayers who are compelled to foot the expenses and delays associated with the appeal process.

It is very clear to see by the permits, variances, decisions and orders issued that they are issued to the same individuals, builders or straws thereof. The majority of permits issued have the common addresses off of Middlesex Ave., most notably 20 Middlesex Ave. which just so happens to be the same address of Northeast Development, Michael Newhouse and Brian Corrigan. Others builders are Richard Stuart and Craig Newhouse both business associates of 20 Middlesex Ave.

In closing, your ability to retrieve the emails of the various department heads, most notably those stated above will paint a very clear picture as to who is doing what when and who knew what when.

Thank you for our courtesy in this regard.

Regards,

Mark D. Nelson      nelson.p.1313@gmail.com

# EXHIBIT B

# The Office of the Inspector General Council

## The Massachusetts legislature created the Office of Inspector General (OIG) Council to help the Inspector General carry out the duties and responsibilities of the office. Chapter 12A, Section 3, of the Massachusetts General Laws created the council.

Meeting with the council at least quarterly, the Inspector General may consult with council members, or ask for their assistance. The council votes to approve summonses for testimony of witnesses in OIG matters and to refer cases to a district attorney's office and certain other investigatory agencies. The council also sets the Inspector General's salary.

Each council member is appointed to a three-year term, and may be appointed to serve additional terms.

TABLE OF CONTENTS

Michael Caira, Chair

Christopher Walsh, Vice Chair

Suzanne Bump, Auditor

Maura Healey, Attorney General

William McNamara, Comptroller

# EXHIBIT C

October 2, 2014  3:25 pm

6 Polk St.
Wilmington, Ma. 01887

Federal Bureau of Investigation
One Center Plaza
Suite 600
Boston, MA 02108
Phone: (617) 742-5533
Fax: (617) 223-6327
E-mail: Boston@ic.fbi.gov

Re:   Request to Investigate, Carole Hamilton, Planning Director Town of Wilmington Ma.

To whom it may concern;

     I respectfully request that you investigate, Carole Hamilton, Planning Director Town of Wilmington Massachusetts.

     Since 1983-1999(planning board member) & 2004 to present (planning/conservation director) Ms. Hamilton has been actively involved in the development of real estate in the Town of Wilmington. So much so that over the last 10 years she has managed to hijack the Planning Board, Conservation Commission, the Building Inspectors Office, the Board of Health, the Town Engineer office, the Board of Assessors, the Property Review Board and to some degree the Town Treasurer and the Town Clerk and Town Manager. She has conspired to coerce other departments to help do her dirty work. She manipulates the facts, misrepresents information, and misdirects taxpaying private property owners and others to benefit herself financially outside the scope of her position as an assistant to the Planning Board and Conservation Commission director. She uses her leverage to extort whatever she can from the majority of individuals she is in contact with as a town official. She not only collects to pensions from her teaching days in town, she collects a salary with benefits and also assists a small group of developers and stream lines their permit process. While on the other hand she has blocked every permit my family and I have applied for over the past 25 years. The denials have resulted in numerous appeals with the DEP, ATB, District Court, Land Court, Superior Court, Appeals Court and the SJC and correspondence with CJAM. As the result of her actions it is slowly draining the retirement funds of my father George a well-respected, WWII Veteran who is currently being treated weekly at MGH. She has interfered with the sale of family properties valued at well over 2 million dollars. Her legal opinions are vigorously defended by town counsel and the town insurance provider's counsels at great expense to everyone and a severe burden on the courts and legal system. The town is a $ 94,000,000 enterprise that crushes taxpaying property owners not in there little protected group.
     The other key players include Mr. James Tighe, developer since mid 60's,  Glen Rd., Northeast Development Owner Joe Langone, 20 Middlesex Ave., Michel Newhouse, Selectman since 1996, former town counsel, 20 Middlesex Ave. his father James Newhouse developer, cousin Craig Newhouse developer, Atty. Scott Garrant 5 Middlesex Ave, the Planning Board

Chairman, Michael Sorrentino has been Chairman since 2000, Atty. Charles Boyle has been chairman of the Board of Appeals since 1994, Inspector of Buildings Secretary Toni Larivee, Mr. Anthony Krezminski on the Board of assessors since 1968. Richard Stuart Developer 10 Middlesex Ave and

I thank you in advance for your consideration,

Mark D. Nelson      nelson.p.1313@gmail.com

Via Email

# EXHIBIT D

June 23, 2016 10:30 a.m.

4 Poplar St.
Wilmington. Ma. 01887

Ms. Judith O'Connell Chairwoman Board of Selectman
121 Glen Rd.
Town Hall                          Via Priority Mail USPSI

Wilmington. Ma. 01887

Re:   MGL Chapter 41 Section 23B

Dear Ms. O'Connell Chairwoman:

I respectfully request that the Board of Selectman investigate the Building Inspector Department pursuant to the above referenced.

On June 16, 2016 @ 3:pm I attempted to file a 134-page application with the Town Clerk in accordance with MGL C. 40A s. 15 (attached herewith) requesting the Board to issue the certificate of occupancy for 4 Poplar St. Sharon George refused to accept the application and directed me to the Building Inspector Department. I stated the law said it is filed with the Town Clerk, Ms. George stated that applications are filed with Building Department first for their review. I followed her misdirection and proceeded to the Building Department and was greeted by Kim Mytych after a brief discussion she date time stamped the front page of the application and accepted the filing fees.

This morning at 10 a.m. I received a letter (attached herewith) and the application and filing fee from Inspector of Building John T.(Al) Spaulding rejecting the application to the Board of Appeals that was appealing his decision.
Mr. Spaulding cannot reject an application appealing himself that must be filed with the Town Clerk. Outrageous dereliction of duty and insubordination! I get a consistent misdirection runaround on every visit.

On June 6, 2016 we mailed you and the other Selectman a letter with 17 pages in support, requesting the Board to intervene and help facilitate with the issuance of the certificate of occupancy permit. (see attached email) On June 21 we requested that this Board return the $46.494.48 in escrow funds being unlawfully held. (see attached email)

Since Mr. Spaulding's appointment in 2008. he has made every attempt to block the issuance of the Certificate of Occupancy and dissuaded every potential buyer with misinformation. false statements that the former carriage house had to be demolished and possible the big house, Mr. Spaulding has brainwashed every Realtor that the property is unsellable and has no intention of ever issuing the Certificate of Occupancy As you know we have an appeals court ruling that all that was needed were "As Built Plans" stamped by a Professional Engineer. Those were provided a long time ago. Also please recall that the Planning Board sued the Board of Appeals Land Court case 2000 misc 267499.

Mr. Spaulding has refused to issue a foundation only permit for 12 Polk St. now on appeal with the Board of Appeals thus delaying the Bank from completing a new home construction loan for the property. This property also has a ruling from the Land court and the

Appeals Court that this is a buildable property. The septic system, well water and electricity along with 112 feet on paved adequate access frontage were completed in 2008.

Mr. Spaulding has refused to issue a foundation only permit for 6 Sharon Street now on appeal with the Board of Appeals thus blocking several ready willing and able buyers from purchasing this property to build a new home. This property is on the market for $ 249,900.
A disposal system construction permit was issued 8-30-2010 and has had to be extended to date. A Simple Storm Water Management permit was issued November 3, 2015. A local builder asked Mr. Spaulding if he could get a building permit for this property and was told no. When he asked why Mr. Spaulding stated because Nelson owns it, Mr. Spaulding clearly has some kind of issue with me personally.

The actions of Mr. Spaulding towards me and my family's properties' is alarming and extremely costly to the town, it's inhabitants as well as my family and I.

It is extremely clear to me that Mr. Spaulding has a preferred, select group of builders that are treated with a streamlined permit process.

Having stated the above I respectfully request that this board investigate this Department and remove Mr. Spaulding from having any dealings with my Family and our property's and assign an outside building inspector as the Town has done in the past when 8 Sharon Street permit was issued or assign the towns Assistant Building Inspector Mr. Magee to issue the Certificate of Occupancy and foundation permits and all 3 appeals can be withdrawn.

I will be refiling the application with the Town Clerk as required by law immediately.

I thank you in advance for your consideration.

Mark D. Nelson

cc:    Board of Selectman
       Michael McCoy 11 Treasure Hill Rd.
       Michael Champoux 10 Gloria Way
       Kevin Caira  251 Woburn St,
       Gregory Bendel 283 Burlington Ave.
       James R. Miceli  State Representative
       Bruce E. Tarr State Senate Minority Leader                    attachments

# TOWN OF WILMINGTON
# BOARD OF APPEALS

## APPLICATION FOR HEARING

LOCATION:  2 - 4  POPLAR STREET                    LOT AREA:  36,016

ASSESSOR'S MAP # :  6        PARCEL # :  20         ZONING DISTRICT:  R - 20

APPLICANT: MARK NELSON  AGENT                  TELEPHONE # : 978 657 0011

ADDRESS: 4 POPLAR STREET  WILMINGTON MA 01887

OWNER'S NAME: CARL REALTY TRUST & NILSSON REALTY TRUST     TELEPHONE #: 978.657.0011

ADDRESS:  6  POLK St  Wilmington   Ma

AS OWNER OF THE SUBJECT PROPERTY, I HEREBY AUTHORIZE THE ABOVENAMED APPLICANT TO ACT ON
MY BEHALF IN ALL MATTERS RELATIVE TO THIS APPLICATION.

_____
Signature of Owner

---

### Deed to the property is recorded in the Middlesex Registry of Deeds:
(This information must be provided and can be found on the property tax bill or the Assessor's online database.)

BOOK _28099_ PAGE _213_ DATE _4-9-2014_          ☐ Land Is Registered

CERTIFICATE NO. _____ BOOK _26899_ PAGE _256_ DATE _1-23-2013_

LAND COURT PLAN NO. _____ BOOK_____ PAGE_____ DATE _____

---

NATURE OF YOUR REQUEST

☐ Special Permit        ☐ Variance – Explain Hardship: _____

☒ Appeal IOB Decision          (REQUIRED)          _____

☐ Amend                                          _____

☒ Other REMOVE OFFICIAL MAP RESTRICTION           _____

ZONING BYLAW SECTION: ___10.3.1 + 4.3.1___
                                            3.3

PROVIDE A WRITTEN DESCRIPTION OF THE PROPOSED WORK/ACTIVITY.

See Attached

Signature of Applicant/or representative _____

DESRIPTION OF PROPOSED WORK/ACTIVITY

1. TO HAVE THE BOARD OF APPEALS ISSUE THE CERTIFICATE OF OCCUPANCY FOR 4 POPLAR STREET.

2. DUE TO RESTICTIONS IMPOSED BY THE OFFICIAL MAP AND HOW IT IS INTERPRETED THIS PROPERTY HAS BEEN DENIED ITS HIGHEST BEST USE FOR OVER 27 YEARS.

3. MGL c. 40A section 7 applies to this property.

4. TO REMOVE THE RESTRICTIONS PLACED ON THIS PROPERTY BY THE OFFICIAL MAP THIS PROPERTY IS LOCATED AT THE END OF AN ANCIENT SUBDIVISION AND THE OFFICIAL MAP DOES NOT APPLY TO THE ISSUANCE OF THE CERTIFICATE OF OCCUPANCY.

5. 770CMR SIXTH EDITION SECTION 102.5.2 APPLIES TO THIS PROPERTY.

6. ON APRIL 9, 2015 THE APPEALS COURT CASE 14-P-1077 RULED THAT ALL THAT WAS NEEDED WAS "AS BUIL PLANS".



**UNITED STATES POSTAL SERVICE**

**POSTAL MONEY ORDER**

Serial Number

2345642 8558

Year, Month, Day     Post Office     U.S. Dollars and Cents

Forty Dollars and 00/100

Amount

Pay to

Address          From          Clerk   0

Address

Memo

© 2003 United States Postal Service. All Rights Reserved.

SEE REVERSE WARNING • NEGOTIABLE ONLY IN THE U.S. AND POSSESSIONS

:00000800 2:     2 3 4 5 6 4 2 8 5 5 8 ‖

---

**UNITED STATES POSTAL SERVICE**

**POSTAL MONEY ORDER**

Serial Number

2345642 8547

Year, Month, Day     Post Office     U.S. Dollars and Cents

One Hundred Dollars and 00/100

Amount

Pay to             Clerk   0

Address          From

Address

Memo

© 2003 United States Postal Service. All Rights Reserved.

SEE REVERSE WARNING • NEGOTIABLE ONLY IN THE U.S. AND POSSESSIONS

:00000800 2:     2 3 4 5 6 4 2 8 5 4 7 ‖

# TOWN OF WILMINGTON
# INSPECTOR OF BUILDINGS

June 21, 2016

Mr. Mark Nelson
Carl Realty Trust & Nilsson Realty Trust
6 Polk Street
Wilmington. MA 01887

RE:    Board of Appeals application – 2-4 Poplar Street

Dear Mr. Nelson:

Your application and package for the Board of Appeals cannot go forward or be
reviewed until the following information is provided:

- Our records show 4 Poplar Street, Map 6 Parcel 20.

- No Planning Board approval was ever sought or approved which is required.

- The Town Assessor's is the Town authority for street addresses.  2 Poplar Street
  was never assigned to this Map and Parcel.

When this information is provided with your application, I can review the completed
package.

Respectfully yours,

Al Spaulding
Inspector of Buildings

AS/t





## TOWN OF WILMINGTON, MASSACHUSETTS

PLANNING & CONSERVATION
DEPARTMENT

(978)658-8238
(978)658-3311
FAX (978)658-3354

DATE: July 10, 2001

LOCATION NAME: 4 Poplar Street     APPLICATION# 81-G 01-2

### CERTIFICATE OF APPROVAL OF A
### SECTION 81-G APPLICATION

It is hereby certified by the Planning Board of the Town of Wilmington, Massachusetts, that at a duly called and properly posted meeting of said Planning Board held on July 10, 2001, it was voted to approve the M.G.L. Ch. 41 Section 81-G application for 4 Poplar Street as shown on plan entitled: "Portion of Wilmington Gardens Addition, Plan Book 26 Plan 36, "Poplar Street" As-Built Plan, Plan of Land in Wilmington, Mass.", dated May 9, 2001, filed with the Planning Board on May 30, 2001, concerning the property located at 4 Poplar Street and shown on Assessor's Map 6 Parcel 20. and containing one (1) proposed lot.  See letter to applicant dated _____ attached hereto.

A copy of the Certificate of Approval of a Section 81-G application is to be filed with the Wilmington Town Clerk and a copy sent to the applicant.

A true copy, attest:

WILMINGTON PLANNING BOARD

Portion of Wilmington
Gardens Addition

Plan Book 28 Plan 36
"Poplar Street"

AS-BUILT PLAN
PLAN OF LAND
IN
Wilmington, Mass.

SCALE: AS SHOWN    DATE: May 9, 2001

A. C. Nelson Cartography

Poplar Street

Walnut Street




PART I ADMINISTRATION OF THE GOVERNMENT

TITLE VII CITIES, TOWNS AND DISTRICTS

CHAPTER 40A ZONING

Section 15 Appeals to permit granting authority; notice of action and further appeals

Section 15. Any appeal under section eight to a permit granting authority shall be taken within thirty days from the date of the order or decision which is being appealed. The petitioner shall file a notice of appeal specifying the grounds thereof, with the city or town clerk and a copy of said notice, including the date and time of filing certified to by the town clerk, shall be filed forthwith to the petitioner, with the officer or board whose order or decision is being appealed, and to the permit granting authority, specifying in the notice grounds for such appeal. Such officer or board shall forthwith transmit to the board of appeals or zoning administrator all documents and papers constituting the record of the case in which the appeal is taken.

Any appeal to a board of appeals from the order or decision of a zoning administrator if any appointed in accordance with section thirteen shall be taken within thirty days of the date of such order or decision or within thirty days from the date on which the appeal application or petition in question shall have been deemed denied in accordance with said section thirteen, as the case may be, by filing the notice thereof in question the town clerk filing the copy thereof with the city or town clerk, and a copy of said notice including the date and time of filing certified by the city or town clerk shall be filed forthwith in the office of the zoning administrator and in the case of an appeal under section eight with the officer whose decision was the subject of the initial appeal. In said zoning administrator. The zoning administrator shall forthwith transmit the board of appeals all documents and papers constituting such record of the case in which the appeal is taken. In application for a special permit or petition for variances even while the board of appeals or the zoning administrator as the case may be exercises original jurisdiction shall be filed in the petition with the city or town clerk and a copy of said appeal, application or petition, including the date and time of filing certified by the city or town clerk, shall be transmitted forthwith to the petition or to the board. Any such filing in said zoning administrator.

Hearing of the board shall be held on the call of the chairman, time, subject to section a member of the board shall determine by its rules. The board of appeals shall hold a hearing on any appeal, application or petition within sixty-five days from the receipt of notice by the board of such appeal, application or petition. The board shall cause notice of hearing to be published and sent to parties in interest as provided in section eleven. The decision of the board

June 6, 2016   11:40 a.m.

4 Poplar St.
Wilmington, Ma. 01887

Ms. Judith O'Connell Chairwoman of the Board of Selectman
121 Glen Road                              jhull@wilmingtonma.gov
Wilmington, MA 01887

Re:   4 Poplar St 01887 Issuance of Certificate of Occupancy

Dear, Ms. O'Connell:

     I respectfully request that the Board of Selectman review the attached 17 page exhibits in support of the issuance of the Certificate of Occupancy Permit. The property at 4 Poplar Street has been denied permits for over 27 years since 1989 and has been compelled to 7 court appeals 6 Appellate Tax Board cases assessed at   $ 1,008,600 and denied a Certificate of Occupancy since 2005 together with 3 more court cases. Inspector John T. Spaulding is attempting to rewrite history and demands that an application for new construction building permit be applied for on the former carriage house/garage before issuing a certificate of Occupancy for 4 Poplar Street. When the Building Permit for 4 Poplar Street was issued on March 10, 2004 it was considered a "preexisting structure". Pursuant to 780 CMR Sixth Edition section 102.5.2.
The Appeals Court agreed that all that was required were "As Built Plan" prepared by a professional Engineer. Those plans certify that the structure complies with 78 CMR Sixth Edition.
     Numerous ready willing and able buyers have been blocked from buying due to the lack of the occupancy permit unlawfully being withheld.
     I respectfully request that the Board of Selectman intervene and help facilitate the issuance of the Certificate of Occupancy for 4 Poplar Street upon receipt of this request.

I thank you in advance for your consideration.

Mark D. Neison

cc:   Michael McCoy,         Michael Champoux,              Greg Bendel,   Kevin Caira
     Jeffrey Hull Town Manager,              Planning Board
     Valerie Gingrich, Planning Director
     Board of Appeals
     Board of Assessors
     Michael J. Woods Public Works Director
     Paul Alunni, Town Engineer
     Ms. Maura Healey, Attorney General
     Ms. Chrystal Kornegay Undersecretary of Housing and Community Development
     Nicole Caprioli, Assistant Attorney General Municipal Law Unit
nicole.caprioli@state.ma.us
     John T Spaulding Inspector of Buildings



Mark Nelson <nelson.p.1313@gmail.com>

## 4 Poplar St 01887 Issuance of Certificate of Occupancy

6 messages

**Mark Nelson** <nelson.p.1313@gmail.com>                    Mon, Jun 6, 2016 at 11:47 AM
To: Jeffrey Hull <jhull@wilmingtonma.gov>, Valerie Gingrich <vgingrich@wilmingtonma.gov>,
tlarivee@wilmingtonma.gov, Michael Woods <mwoods@wilmingtonma.gov>, Karen Rassias
<krassias@wilmingtonma.gov>, Paul Alunni <palunni@wilmingtonma.gov>, Chrystal.Kornegay@state.ma.us,
Maura.Healey@state.ma.us, Al Spaulding <aspaulding@wilmingtonma.gov>
Cc: Mark Nelson <nelson.p.1313@gmail.com>

please see attached

Mark Nelson
3 Polk Street
Wilmington, Ma. 01887
978.657.0011
1313.P.1313

CONFIDENTIALITY NOTE: (Because electronic data can be easily corrupted, the integrity of the
contents of this message (and any attachments hereto) cannot be guaranteed.) The Information Contained
in This E-mail Message is Legally Privileged and Confidential information intended only for the Use of the
Individual or Entity Named Above. If the Reader of This Message Is Not the Intended Recipient, You are
HEREBY NOTIFIED That any Dissemination, Distribution or Copy of this Email is Strictly Prohibited. If
you have received this EMAIL IN ERROR, PLEASE IMMEDIATELY NOTIFY Us by Telephone (978-657-
0011) so we may correct our Email Addressing Error and then PLEASE DESTROY the ORIGINAL
MESSAGE

2 attachments

📎 4 Poplar St 01887 Issuance of Certificate of Occupancy.pdf
    647K

📎 4 POPLAR ST 01887 Certificate of Occupancy  support exhibits.pdf
    10483K

**Jeffrey Hull** <jhull@wilmingtonma.gov>                    Tue, Jun 7, 2016 at 8:59 AM
To: Mark Nelson <nelson.p.1313@gmail.com>

Mr. Nelson,

On behalf of the Chairman of the Board of Selectmen I am responding to your June 6, 2016
correspondence. The Board of Selectmen have no jurisdiction in the matter that you raise as they are not
the permit granting authority.

Jeffrey M. Hull

Town Manager
Town of Wilmington
121 Glen Road
Wilmington, MA 01887
phone: 978 - 658-3311

email: jhull@wilmingtonma.gov

**From:** Mark Nelson [mailto:nelson.p.1313@gmail.com]
**Sent:** Monday, June 06, 2016 11:48 AM
**To:** Jeffrey Hull <jhull@wilmingtonma.gov>; Valerie Gingrich <vgingrich@wilmingtonma.gov>; Toni LaRivee <tlarivee@wilmingtonma.gov>; Michael Woods <mwoods@wilmingtonma.gov>; Karen Rassias <krassias@wilmingtonma.gov>; Paul Alunni <palunni@wilmingtonma.gov>; Chrystal.Kornegay@state.ma.us; Maura.Healey@state.ma.us; Al Spaulding <aspaulding@wilmingtonma.gov>
**Cc:** Mark Nelson <nelson.p.1313@gmail.com>
**Subject:** 4 Poplar St 01887 Issuance of Certificate of Occupancy

[Quoted text hidden]

Mark Nelson <nelson.p.1313@gmail.com>                        Tue, Jun 7, 2016 at 9:47 AM
To: Jeffrey Hull <jhull@wilmingtonma.gov>, Chrystal.Kornegay@state.ma.us, Maura.Healey@state.ma.us,
nicole.caprioli@state.ma.us, jfoskett <jfoskett@dwboston.com>
Cc: MD <nelinc@verizon.net>

Dear Mr. Hull,

Inspector Spaulding has no intention of ever issuing the Certificate of Occupancy and keeps moving the
goal line. As a matter of fact he even had his neighbor in Everett visit the property in an attempt to buy at a
discounted price because it lacked to occupancy. He has also made statements to me that "If he had my
money he would burn his". He has stated to buyers that the walls in the former carriage house had to be
ripped out. The Appeals court, Superior Court and State Building code all concurred that all we needed
was "As Built Plans" . We submitted those plans a long time ago. I respectfully request that the assistant
Building Inspector issue the Certificate of Occupancy. You obviously did not read the documents attached
to the last correspondence. Also consider this a formal complaint to Mr. Spaulding's actions towards my
family and the haling of this matter,

Mark Nelson

[Quoted text hidden]

June 21, 2016 12:30 p.m.

5 Polk St.
Wilmington, Ma. 01887

Ms. Judith O'Connell Chairwoman Board of Selectman
121 Glen Rd.
Town Hall                                                        via Email

Wilmington, Ma. 01887

Re:     Return Escrow Funds

Dear Ms. O'Connell:

We respectfully request the return of escrow funds being held since 2002 in
a. Bank of America account 00941768685400500036 Mary Nelson $ 24,592.25 plus
   interest.
b. Bank of America account 00941768685400500059 George Nelson (deceased) $ 21,902.55
   plus interest.

Total $ 46,494.48  Mary & George Nelson have been paying taxes on interest for over 15
years. See attached 1099

My Mother Mary Nelson is 89 years old and would like to have her funds returned to her
as soon as possible. These funds are allegedly to construct sidewalks on private ways
across the property of others based on a Subdivision Plan filed by others that expired in
February 1998. And for the installation of catch basins in solid ledge as proposed by the
previous Director of Engineering Mr. Anthony Pronski located on a Private Driveway on
Page Street that provides adequate access to 1 home. No other homes can be built on
Page St.

I thank you in advance for your consideration.

Mark D. Nelson, Power of Attorney

cc:    Board of Selectman, Jeffrey Hull Town Manager, Kendra Amoral Assistant Town Manager
       Sharon George Town Clerk, Bank of America
       Mary Nelson                                                    attachments
       Alan Nelson
       Pamela L. MacKenzie Treasurer/Collector
       James R. Miceli  State Representative
       Bruce E. Tarr State Senate Minority Leader



Mark Nelson <nelson.p.1313@gmail.com>

## Return Escrow Funds
2 messages

**Mark Nelson** <nelson.p.1313@gmail.com>    Tue, Jun 21, 2016 at 12:39 PM
To: Jeffrey Hull <jhull@wilmingtonma.gov>, Kendra Amaral <kamaral@wilmingtonma.gov>, Sharon George <sgeorge@wilmingtonma.gov>, "Pam MacKenzie, Town Treasurer/Collector" <treasurer@wilmingtonma.gov>, "Alan C. Nelson" <alannelson@live.com>, mary.m.nelson@live.com, "Tarr, Bruce E (SEN)" <Bruce.Tarr@masenate.gov>, James.Miceli@mahouse.gov

please see attached

Mark Nelson
9 Birch Street
Wilmington, Ma. 01887
978.657.0011

CONFIDENTIALITY NOTE: (Because electronic mail can be altered electronically, the integrity of the contents of this message (and any attachments hereto) cannot be guaranteed.) The information Contained in This Email Message is Legally Privileged and Confidential Information Intended Only for the use of the Individual or Entity Named Above. If the Reader of This Message is Not the Intended Recipient, You are HEREBY NOTIFIED That any Dissemination, Distribution or Copy of this Email is Strictly Prohibited. If you have received this EMAIL IN ERROR, PLEASE IMMEDIATELY NOTIFY US by Telephone (978-657-0011) so we may correct our Email Addressing Error and then PLEASE DESTROY the ORIGINAL MESSAGE

📎 **June 21 2016 return escrow funds request.pdf**
1742K

**Jeffrey Hull** <jhull@wilmingtonma.gov>    Tue, Jun 21, 2016 at 7:18 PM
To: Mark Nelson <nelson.p.1313@gmail.com>

Mr. Nelson,

I am responding to your request on behalf of Board Chair Judy O'Connell. As you know the Board of Selectmen are not vested with the authority to direct the release of escrow funds in this matter.

Jeffrey M. Hull

Town Manager
Town of Wilmington
121 Glen Road

Wilmington, MA 01887
phone: 978 - 658-3311

email: jhull@wilmingtonma.gov


**From:** Mark Nelson [mailto:nelson.p.1913@gmail.com]
**Sent:** Tuesday, June 21, 2016 12:40 PM
**To:** Jeffrey Hull <jhull@wilmingtonma.gov>; Kendra Amaral <kamaral@wilmingtonma.gov>; Sharon George <sgeorge@wilmingtonma.gov>; Pam MacKenzie, Town Treasurer/Collector <treasurer@wilmingtonma.gov>; Alan C. Nelson <alannelson@live.com>; maryum.nelson@live.com; Tarr, Bruce E (SEN) <Bruce.Tarr@masenate.gov>; James.Miceli@mahouse.on
**Subject:** Return Escrow Funds

[Quoted text hidden]

**Nelinc@outlook.com**

| | |
|---|---|
| **From:** | Jeffrey Hull |
| **Sent:** | Thursday, June 23, 2016 6:26 PM |
| **To:** | Valerie Gingrich |
| **Subject:** | FW: Mark Nelson |
| **Attachments:** | Mark Nelson.pdf |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

Valerie,

As you will see from the attached document received today from Mark Nelson he is seeking that the Board conduct an investigation of Al. I do not intend to conduct an investigation or suggest the Board do so. I do think it would be helpful to the Board to understand in broad sense the issues that the town is dealing with and the attempts made most recently to address his issues.

i know that there was significant effort to present terms to Mark and his attorney that would have provided a "roadmap" on 4 Poplar to obtain an occupancy permit. As i recall he refused to put up any of his own funds to complete the work and refused to lower the sale price enough so that the interested buyer could address the issues on his own. is that accurate?

is there a document that we currently have that describes the issues on 4 Poplar and the options presented for resolution as well as the efforts made?

Jeff

Jeffrey M. Hull
Town Manager
Town of Wilmington
121 Glen Road
Wilmington, MA 01887
phone: 978 - 658-3311
email: jhull@wilmingtonma.gov

1

**Nelinc@outlook.com**

| | |
|---|---|
| **From:** | Jeffrey Hull |
| **Sent:** | Thursday, June 23, 2016 6:56 PM |
| **To:** | Valerie Gingrich; Al Spaulding |
| **Subject:** | FW: Board of Appeal vacancy |
| **Attachments:** | LAND COURT ORDER.PDF |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

Valerie & A..

The attached decision from the Board of Appeals appears to overrule the building inspector at the time citing the Official Map and directs the building inspector to grant a building permit for 4 Poplar Street.  Was the building permit issue?  What has been the impact of this ruling on 4 Poplar Street?

Jeff

Jeffrey M. Hull
Town Manager
Town of Wilmington
121 Glen Road
Wilmington. MA 01887
phone: 978 - 658-3311
email: jhull@wilmingtonma.gov

**From:** Mark Nelson [mailto:nelson.p.1313@gmail.com]
**Sent:** Monday, June 20, 2016 3:53 PM
**To:** Jeffrey Hull <jhull@wilmingtonma.gov>; jfoskett <jfoskett@dwboston.com>; Sharon George <sgeorge@wilmingtonma.gov>; Kendra Amaral <kamaral@wilmingtonma.gov>; Linda Golden <lgolden@wilmingtonma.gov>
**Cc:** MD <nelinc@verizon.net>
**Subject:** Board of Appeal vacancy

June 20, 2016  3:350 p.m.

4 Poplar St.
Wilmington, Ma. 01887

Mr. Jeffrey Hull Town Manager
Town Hall                                                                        121 Glen
Rd              jhull@wilmingtonma.gov              Wilmington, Ma. 01887

Re: Board of Appeal vacancy

Dear Mr. Hull,

1

I respectfully request that my name be added to the 5 residents wishing to serve on the Board of Appeals. I have been a resident of the Town of Wilmington for 61 years and I am very familiar with land law and the duties of both the Zoning Board of Appeals as well as the Official Map Board of Appeals. In Land Court Case misc 2000 267499 Chief Justice Scheier in her ORDER dated June 3, 2013 that I served to represent the Board of Appeals in this matter. As case that I successfully prevailed in a DISSMISAL. (see attached order of Court)

_____        VIA EMAIL   Fax 978 658 3334
Mark Nelson

Cc:
     Board of Selectman
     Mr. Jeffrey Hull, Town Manager
     Mr. John Foskett  Town Counsel jfoskett@dwboston.com
     Ms.  Kendra Amaral Assistant Town Manager
     Ms.Sharon George, Town Clerk

--
*Mark Nelson*
*6 Polk Street*
*Wilmington, Ma. 01887*
*978.657.0011*
*2010-P-1313*

CONFIDENTIALITY NOTE: [Because electronic mail can be altered electronically, the integrity of the contents of this message (and any attachments hereto) cannot be guaranteed.] The Information Contained in This Email Message is Legally Privileged and Confidential Information Intended Only for the Use of the Individual or Entity Named Above.  If the Reader of This Message is Not the Intended Recipient, You are HEREBY NOTIFIED That any Dissemination, Distribution or Copy of this Email is Strictly Prohibited.   If you have received this EMAIL IN ERROR, PLEASE IMMEDIATELY NOTIFY US by Telephone (978-657-0011) so we may correct our Email Addressing Error and then PLEASE DESTROY the ORIGINAL MESSAGE

Wilmington, MA 01887
phone: 978 - 658-3311
email: jhull@wilmingtonma.gov


From: Mark Nelson [mailto:nelson.p.1313@gmail.com]
Sent: Tuesday, June 07, 2016 9:48 AM
To: Jeffrey Hull ; Chrystal.Kornegay@state.ma.us; Maura.Healey@state.ma.us; nicole.caprioli@state.ma.us; jfoskett
Cc: MD
Subject: Re: 4 Poplar St 01887 Issuance of Certificate of Occupancy

Dear Mr. Hull,

Inspector Spaulding has no intention of ever issuing the Certificate of Occupancy and keeps moving the goal line. As a matter of fact he even had his neighbor in Everett visit the property in an attempt to buy at a discounted price because it lacked to occupancy. He has also made statements to me that "If he had my money he would burn his". He has stated to buyers that the walls in the former carriage house had to be ripped out. The Appeals court, Superior Court and State Building code all concurred that all we needed was "As Built Plans" . We submitted those plans a long time ago. I respectfully request that the assistant Building Inspector issue the Certificate of Occupancy. You obviously did not read the documents attached to the last correspondence. Also consider this a formal complaint to Mr. Spaulding's actions towards my family and the haling of this matter,

Mark Nelson

On Tue, Jun 7, 2016 at 8:59 AM, Jeffrey Hull wrote:
Mr. Nelson,

On behalf of the Chairman of the Board of Selectmen I am responding to your June 6, 2016 correspondence. The Board of Selectmen have no jurisdiction in the matter that you raise as they are not the permit granting authority.

Jeffrey M. Hull
Town Manager

**Jeffrey Hull** jhull@wilmingtonma.gov via additionnetworks.net                6/7/16


me

Mr. Nelson,

On behalf of the Chairman of the Board of Selectmen I am responding to your June 6, 2016 correspondence.  The Board of Selectmen have no jurisdiction in the matter that you raise as they are not the permit granting authority.

Jeffrey M. Hull
Town Manager
Town of Wilmington
121 Glen Road
Wilmington, MA 01887
phone: 978 - 658-3311
email: jhull@wilmingtonma.gov

From:   "Al Spaulding" <(FYDIBOHF23SPDLT)/cn=Recipients/cn=cd40258dd8404ad4958eb88662e57146-
        aspaulding@Wilm>
To:     "Jeffrey Hull </o=OEXCH081/ou=Exchange Administrative Group <"
        "Kendra Amaral </o=OEXCH081/ou=Exchange Administrative Group <"
        Recipients
        Recipients
CC:
Date:   6/16/2016 2:17:07 PM
Subject:

FYI........Mark Nelson has dropped three applications for 2/4 Poplar, 6 Sharon and 12 Polk.

Is there any way that the Town can get a figure on how much money Deutch Williams has billed the Town for Mark's actions?

I ask this because he quick to throw out numbers at Town Meeting on how much his family has spent.

I believe the Town should counter with how much the Nelsons' have cost the Town.
Signed
Frustrated in Room 5

# EXHIBIT E

# AGENDA FOR BOARD OF SELECTMEN MEETING

August 14, 2017 @ 7:00 p.m.

Room 9, 121 Glen Road, Wilmington

*REVISED – ORIGINAL POSTED AUGUST 10, 2017 @ 4:09 P.M.*

1. Roll Call:   Chairman   CHAMPOUX
               Selectman   BENDEL
               Selectman   CAIRA
               Selectman   LOUD
               Selectman   McCOY

   Pledge of Allegiance

2. Transmitting of Treasury Warrant:   #   3, 3A, 4, 4A, 5, 5A, 6 & 6A   .

3. Approval of Minutes of:   May 8, 2017   .

4. Appointments:

   7:00 – 7:15   Joseph Martiniello, We're One Wilmington, re:  We're One Wilmington Program
                 Update, Request to Conduct the 2018 Run for Wilmington/Walk for Kim Forte on
                 Sunday, April 22, 2018 and Request to Place Festival of Tree Signs on the Town
                 Common from November 27 through December 3.

   7:15         Joseph Martiniello, Relay for Life of Wilmington-Billerica, re:  Tenth Annual
                 American Cancer Society Relay for Life, Friday, June 15, 2018 and Request to
                 Illuminate Town Common Purple for the Month of May.

5. Communications:

   Memorandum from Town Manager, re:  Olin Corporation – Revised Focused Human Health Risk
       Assessment – OU3.

   Memorandum from Valerie Gingrich, Planning & Conservation Director, re:  MBTA Positive
       Train Control Equipment.

   Memorandum from Valerie Gingrich, Planning & Conservation Director, re:  Affordable Housing
       Status and Information.

   Notice Regarding Residential Electronics Recycling.

   Correspondence from Margaret J. Hurley, Municipal Law Unit, Office of the Attorney General,
       re:  2017 Annual Town Meeting – Warrant Articles 42, 45, 46, 47, 48, 49, 54, 55 and 56.

   Correspondence from Metropolitan Area Planning Council and MBTA Advisory Board,
       re:  Municipal Elections to the Boston Region Metropolitan Planning Organization.

   Letter from Jane Lyman, Sr. Manager, Government Affairs, Comcast, re:  Comcast Agreement
       for Residential Services.

6. Board to Consider Request of Joseph Martiniello, We're One Wilmington, to Place Signs on the
       Town Common for the Festival of Trees.

7. Board to Consider Request of, Joseph Martiniello, Relay for Life, that Wilmington Town
       Common be Illuminated in Purple During the Month of May.

8. Board to Consider Request of Christina Stewart, Library Director, to Use the Swain Green
       on Saturday, September 23, from 1:00 p.m. to 5:00 p.m.

TOWN OF WILMINGTON, MA   2017 AUG 11  PM 4:09   RECEIVED TOWN CLERK

9. Board to Consider Request of Dana Burnham, President, Wilmington Farmers Market, on Behalf of Bob Beck to Use the Municipal Parking Lot on Sunday, September 10 and Sunday, October 15 from 10:00 a.m. to 1:00 p.m. for an Old-Fashioned Classic Car Show.

10. Board to Consider Request to Install a Stop Sign at the Intersection of Garden Avenue and King Street.

11. Public Comments

New Business — *ITEMS NOT REASONABLY ANTICIPATED BY THE CHAIRMAN 48 HOURS IN ADVANCE OF THE MEETING*

A. Board to Consider Authorizing the Town Manger to Enter Into an Agreement Related to 4 Poplar Street.

Important Dates:

| | | |
|---|---|---|
| Sundays Through October 29 | – | Farmer's Market – Town Common Parking Lot – 10:00 a.m. to 1:00 p.m. |
| August 19 | – | Ice Bucket Challenge – Rotary Park – 10:30 a.m. |
| August 29 | – | Schools Open – Grades 1 – 12 |
| September 4 | – | Labor Day – *Town Offices Closed* |
| September 5 | – | 1st Day of Kindergarten |
| September 6 | – | Brush Drop-Off – Old Main Street – 8:00 a.m. to 2:00 p.m. |
| September 9 | – | Brush Drop-Off – Old Main Street – 9:00 a.m. to 4:00 p.m. |
| September 10 | – | Harnden Tavern Open House – 2:00 p.m. to 4:00 p.m. |
| September 9 | – | Library Resumes Saturday Schedule – 9:00 a.m. to 5:00 p.m. |
| September 11 | – | Board of Selectmen – Town Hall – Room 9 – 7:00 p.m. |
| September 17 | – | Chamber of Commerce Half Marathon and 5K Run/Walk |
| September 23 | – | Shredding Day – Municipal Parking Lot – 9:00 a.m. to 12:00 p.m. |
| September 25 | – | Board of Selectmen – Town Hall – Room 9 – 7:00 p.m. |
| September 30 | – | Mass Memories Road Show – WHS Cafeteria – 10:00 a.m. to 3:00 p.m. |

TOWN OF WILMINGTON, MA

2017 AUG 11 PM 4:09

RECEIVED
TOWN CLERK

BOARD OF SELECTMEN MEETING

August 14, 2017

Chairman Michael L. Champoux called the meeting to order at 7:03 p.m. in Room 9 of the Town Hall.  Present were Selectmen Gregory B. Bendel and Edward P. Loud, Sr.  Selectmen Kevin A. Caira and Michael V. McCoy were excused.  Also present was Town Manager Jeffrey M. Hull.

Chairman Champoux asked those present to rise and he led the pledge of allegiance.

TREASURY WARRANTS

Chairman Champoux asked for a motion to accept the Treasury Warrants.  A motion was made by Selectman Bendel, seconded by Selectman Loud and by the affirmative vote of all, it was

VOTED:      That the Board of Selectmen accept Treasury Warrants 3, 3A, 4, 4A, 5, 5A, 6 and 6A.

MINUTES

A motion was made by Selectman Loud, seconded by Selectman Bendel and by the affirmative vote of all, it was

VOTED:      That the Board of Selectmen approve the minutes of their meeting held May 8, 2017 and all action taken is hereby ratified and confirmed.

**JOSEPH MARTINIELLO, WE'RE ONE WILMINGTON, RE:  WE'RE ONE WILMINGTON PROGRAM UPDATE, REQUEST TO CONDUCT THE 2018 RUN FOR WILMINGTON/WALK FOR KIM FORTE ON SUNDAY, APRIL 22, 2018 AND REQUEST TO PLACE FESTIVAL OF TREES SIGNS ON THE TOWN COMMON FROM NOVEMBER 27 THROUGH DECEMBER 3**

Mr. Martiniello stated that the Festival of Trees, We're One Wilmington's annual fundraiser, is scheduled for December 2 and 3 and they would like to put signs on the Town Common the week prior to the event as they have done in the past.  In addition, he is requesting approval to conduct the 2018 Run for Wilmington/Walk for Kim Forte.  The 8th annual event is proposed for Sunday, April 22, 2018.  Mr. Martiniello advised that last year over 566 people registered for the event.  He stated that over $2,700 was distributed to 39 non-profit organizations in Wilmington.  Over $7,500 was distributed in the form of high school scholarships.  Mr. Martiniello stated that Jr. WOW was established during the year as well as the care package program.  The care package program entails sending small gifts, gift cards and positive thoughts to individuals with financial, emotional or medical hardships.

He reviewed other programs that WOW has provided assistance in an effort to give back to the community.

Chairman Champoux asked if there were any questions or comments from the Board.  Selectman Bendel thanked Mr. Martiniello for his work and looks forward to participating again this year.  Selectman Loud offered comments about the Festival of Trees.

Chairman Champoux asked if the Festival of Trees coincided with the Tree Lighting and was advised that it does.

Board of Selectmen
Meeting Minutes – August 14, 2017
Page 6

Selectman Bendel stated that he believes the Board needs to be creative. He stated that he would love to lower taxes and acknowledges the Board is not able to and believes it may be addressed by curbing expenditures. He stated that he has struggled with the term Free Cash and has had conversations with both the former and current Chairmen of the Board of Selectmen.

Chairman Champoux addressed Mr. Lepore's comments specifically regarding Free Cash and property taxes.

Selectman Loud stated that he appreciates Mr. Lepore's comments and agreed that the Board needs to get creative to allow young residents and the elderly to be able to afford to stay in Town. Selectman Loud reviewed what residents receive as a result of their taxes.

Town Manager Hull stated that there is no question that taxes have gone up and everything is relative and noted that surrounding communities are expensive and have had significant increases in their taxes. Eastern Massachusetts is a desirable place to live due to the access to Boston. He commented relative to Free Cash and noted communities would like to put money aside for a "rainy day" and noted that in 2008 Wilmington went from $9 million in Free Cash to $3 million and it was used to keep people employed and to provide the same level of services. Town Manager Hull stated that the Town has significant liabilities including a pension liability that statutorily must be paid by 2035. Town Manager Hull addressed the comments relative to a substation and noted that in addition to the cost to build a substation there are costs for personnel which increases the Town's liabilities.

Selectman Bendel stated that members of the Board hear from residents every day. He stated that he was disappointed to hear that the Cecil Group did not believe a substation was necessary. He stated that he asked for a meeting with department heads to discuss the Yentile Farm Recreational Facility to determine if there are additional needs so that the remaining funds for this project so are not returned to Free Cash only to request funding for something at the park at a future Town Meeting.

NEW BUSINESS – *ITEMS NOT REASONABLY ANTICIPATED BY THE CHAIRMAN 48 HOURS IN ADVANCE OF THE MEETING*

**BOARD TO CONSIDER AUTHORIZING THE TOWN MANAGER TO ENTER INTO AN AGREEMENT RELATED TO 4 POPLAR STREET**

Town Manager Hull stated that there have been ongoing discussion between Valerie Gingrich, Planning & Conservation Director; Shelly Newhouse, Health Director; Al Spaulding, Building Inspector and a potential buyer for 4 Poplar Street. He advised that the property is currently owned by Mark Nelson and noted that it does not have a certificate of occupancy which has created challenges for the Town to bring the property into compliance and for the owner to sell the property. An agreement would have the buyer put funds into an escrow account in an amount adequate to address outstanding issues and the certificate of occupancy will be placed in escrow. If the closing goes through the certificate will be provide to the new owner and the new owner will be responsible for bringing the home into compliance including road work, drainage, make application to Board of Health for Title V, obtaining building permit for garage, modify garage so that it is not a living space and provide as built plans for current structure. Issues must be addressed within 120 days. Town Manager Hull advised that Town Counsel has been involved in the development of the agreement.

Board of Selectmen
Meeting Minutes – August 14, 2017
Page 7

Chairman Champoux asked if there were any questions or comments from the Board.  Selectman Loud asked if there were any outstanding issues with the current owner of the property.  Town Manager Hull advised that he believes there is at least one case.  Town Manager Hull advised that negotiations are taking place with the potential buyer on issues that need to be addressed.

Selectman Bendel asked who would be financially responsible.  Town Manager Hull advised that the potential buyer would be responsible.

A motion was made by Selectman Loud, seconded by Selectman Bendel and by the affirmative vote of all, it was

VOTED:   That the Board of Selectmen authorize the Town Manager to enter into an agreement relative to 4 Poplar Street.

Selectman Loud recognized Nolan Giroux, USMC, stationed in 29 Palms, California and thanked him for his service.

Selectman Loud stated that he attended the Wilmington Library's Summer Bash and commented that it was a lot of fun.  He stated that he also attended the Wilmington Police Department's National Night Out and offered his congratulations for successful events.

Selectman Loud asked Town Manager Hull to provide the number of police and fire responses to the apartment complex on Lowell Road in North Reading.  He opined that if the proposed over 55 development is built, it will tax Wilmington's resources.  Town Manager Hull asked what period of time he would like the information for and was advised since the apartments were built.

Selectman Bendel stated that he also attended National Night Out and expressed his appreciation to all the departments that made it happen.

Selectman Bendel stated that this is the last meeting before school starts.  He wished student and athletes well and asked drivers to be cautious of students.

Selectman Bendel stated that the Substance Abuse Coordinator position has been filled and the start date is Monday, August 21.

Selectman Bendel noted that there is a 5K road race to benefit the Tim Brady Foundation.

Selectman Bendel stated that he looks forward to a future agenda item to speak more about spending and ways to "tighten our belt".

Chairman Champoux noted that Saturday, August 19 is the Community Ice Bucket Challenge and encouraged residents to participate.

Town Manager Hull stated that he received an email on Friday, August 11 which notified the Town of funds it will receive from Massachusetts Interlocal Insurance Association.  He advised that the Town will receive $47,915 in workers' compensation and property liability insurance credits that may be used to offset premiums.  He recognized Dee Casey, Assistant Town Manager, and Jamie Magaldi, Chairman of the Safety Committee.  Town Manager Hull reviewed activities that have taken place to earn the credits.  Ms. Casey stated that in addition, the Town seeks grants to maximize savings for the Town.

# EXHIBIT  F

## AGREEMENT REGARDING 4 POPLAR STREET, WILMINGTON, MASSACHUSETTS

This Agreement regarding 4 Poplar Street Wilmington, Massachusetts (the "Agreement") is made as of this _____ day of _____, 2017, by and among _____ and _____ having an address of 4 Poplar Street, Wilmington, Massachusetts 01887 ("Owners") and the Town of Wilmington, a Massachusetts municipal corporation having an address of 121 Glen Road, Wilmington, Massachusetts 01887 ("Town"), acting by and through its Board of Selectmen ("Board"), with reference to the following facts and subject to the following conditions.

Whereas, the Owners own that certain property known as 4 Poplar Street in Wilmington, Massachusetts;

Whereas, the Owners and the Town have undertaken good faith negotiations to resolve any outstanding issues concerning the improvement of said property pursuant to all applicable laws, codes, regulations, bylaws and permits; and

Whereas, the Owners and Town desire to resolve such outstanding issues concerning said property.

Now, therefore, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Owners and Town hereby agree as follows:

1.    <u>Description of Property.</u>  The property subject to this Agreement is located at 4 Poplar Street in Wilmington, Massachusetts described by the plan entitled "Wilmington Gardens - Addition, Wilmington, Mass.," dated June 12, 1909 and recorded at the Registry in Plan Book 26, as Plan No. 36 (the "Plan") as Lots 192 through 204 (inclusive), together with all the improvements thereto (collectively, the "Property").  The Property includes, without limitation, a house (the "House"), a garage ("Garage") and the private way shown on the Plan as Poplar Street to the centerline of said Poplar Street, subject to and with the benefit of the right to improve and use the entire width of Poplar Street as shown on the Plan ("Poplar Street").

2.    <u>Ownership of Property and Title Reference.</u>  The Owners own the Property as shown on the Plan and the improvements thereto pursuant to the deed recorded at the Registry in Book _____, Page _____.  The Owners each certify, warrant and represent to the Town that the Owners are the sole record title owners of the Property as described herein.

3.    <u>Compliance with Legal Requirements.</u>  To date, the Town has not issued a certificate of occupancy for the Property arising from a failure of the Property to comply with all applicable laws, codes, regulations, bylaws, permits, approvals and other legal requirements (collectively, the "Legal Requirements"), including but not limited to the payment of all required fees.  The Owners shall reasonably promptly cause the Property to comply with all Legal Requirements in accordance with such Legal Requirements and pursuant to the terms of this Agreement by performing all work outlined by Section 5 below and such other work necessary to cause the Property to comply with all Legal Requirements (collectively, the "Work").  The Owners acknowledge and agree that the Town's Building Inspector ("Inspector") is charged with the enforcement of the State Building Code and the Town's Zoning Bylaws, as either of the same

may be amended from time to time, and that the Board may not be legally empowered or required to cause the Inspector or any other Town officials, boards or departments to agree to or sign off on the issuance of the Certificate of Occupancy (defined below) or any other permit, approval or waiver. Notwithstanding any provision in this Agreement to the contrary, it is understood and agreed that the Town may have no power or authority to disregard or waive any particular Legal Requirements and nothing in this Agreement shall be deemed a full or partial waiver, modification or release by the Town of any Legal Requirements or the legal obligations of the Owners or Successors (defined below) to comply with any Legal Requirements.

4.   <u>Escrowing of Funds</u>. Upon execution of this Agreement by the Owners, and prior to the execution of this Agreement by the Town, the Owners shall pay to the Town $38,500 (the "Escrowed Funds"). Except as expressly stated in this Agreement, the Town shall hold all the Escrowed Funds in escrow and not release the Escrowed Funds until all the Work and all other obligations of the Owners are fully completed to the reasonable satisfaction of the Town. The Escrowed Funds may be held by the Town in a non-interest bearing account and may be commingled with other funds of the Town or in any other manner that the Town deems appropriate. The Owners shall reasonably promptly apply for all necessary permits and approvals for all Work pursuant to all applicable Legal Requirements. Notwithstanding any provision herein to the contrary, should any portion of the Work not be completed pursuant to this Agreement within the allotted time set forth herein, then the amount of the Escrowed Funds allocated to that task shall immediately and automatically be forfeited to the Town for any use or appropriation by the Town without the need for any further act or permission.

5.   <u>Performance of Work</u>. Compliance with Legal Requirements shall require without limitation the Work described by this Section 5 to be performed in a good and workmanlike manner, in compliance with all Legal Requirements to the satisfaction of the Town, as determined by the Town in its usual manner, and within the completion times set forth below.

| Work Item | Completion Date | Escrow Amount |
|---|---|---|
| Submit as-built plans for House and certified plot plan showing all building components and setbacks | 120 days from full execution | $2,000 |
| Comply with Title 5 | 120 days from full execution | $1,500 |
| Submit application for certificate of occupancy for House and pay application fee | Upon execution by Owners | $0 |
| Submit application and plans for building permit for Garage and pay application fee | Upon execution by Owners | $0 |
| Rehabilitation of Garage to meet Zoning and Building Code Requirements as shown on approved building plans to be submitted per Work Item above | 120 days from full execution | $25,000 |
| Complete paving and drainage for Poplar Street | 120 days from full execution | $10,000 |

The Town reserves the right to require any additional work that the Town, in its sole discretion and in its usual manner, determines to be needed pursuant to any Legal Requirements to be completed before a certificate of occupancy will be issued for the use of the Garage.

The Work shall be completed at the sole cost of the Owners, who shall be jointly and severally responsible for all costs arising from the completion of the Work. The Inspector shall be afforded reasonable access to the Property to confirm the completion of the Work and compliance with Legal Requirements.

In the event any Work is not performed pursuant to this Section 5 or within the completion times above, then the Town shall have the right, but not the obligation, to cause any of the Work to be completed pursuant to this Agreement by any legal means, including but not limited to the Town electing, in the Town's sole discretion, to: (a) complete the Work, (b) hire contractors to complete the Work, and/or (c) use all or any portion of the Escrowed Funds to complete or pay for labor, materials and reasonable charges arising from the Work.

The Town is not representing to the Owners what permits or approvals must be obtained for the Work to be performed or that the performance of the Work alone will be sufficient for the issuance of any permits, approvals, certificates of occupancy or compliance with any Legal Requirements. The Owners, for themselves and for all successors and assigns, each acknowledges and agrees that the Town has not made, does not make and specifically negates and disclaims any representations, warranties, promises, covenants, agreements or guaranties of any kind or character whatsoever, whether express or implied, oral or written, past, present or future, of, as to, concerning or with respect to (a) the value, nature, quality or condition of the Property, including without limitation the water, soil and geology and any structures thereat and improvements thereto, (b) the value of or income to be derived from the Property, (c) the suitability of the Property for any and all activities and uses, (d) the compliance of the Property with any Legal Requirements, (e) the habitability, merchantability, marketability, profitability of the Property, or fitness of the Property for a particular purpose, (f) the manner or quality of the construction or materials, if any, incorporated into the Property, (g) the manner, quality, state of repair or lack of repair of the Property, (h) compliance with any laws, rules, regulations, orders or requirements, including but not limited to Massachusetts General Law chapter 21E, the Massachusetts Contingency Plan (310 CMR § 40.0000) and any environmental protection, pollution or land use laws, regulations or bylaws, or (i) any other matter with respect to the Property. Except for any representations, warranties, agreements, guaranties, statements or promises expressly set forth in this Agreement, no person acting on behalf of the Town is authorized to make, and by execution hereof, the Owners each acknowledge that no person has made, any representation, agreement, statement, warranty, guaranty or promise regarding the Property or the matters contemplated herein; and no such representation, warranty, agreement, guaranty, statement or promise, if any, made by any person acting on behalf of the Town shall be valid or binding upon the Town unless expressly set forth herein. The Owners, for themselves and all their successors, further agree that except as otherwise expressly set forth in this Agreement, the Owners and all their successors will have the opportunity to inspect the Property and will rely solely on their own investigations of the Property and not on the existence of any certificates, permits or approvals or any information provided or to be provided by the Town and agree that by executing this Agreement, except as otherwise may be expressly set forth herein, shall constitute a waiver of all objections, claims and demands against the Town, including

without limitation, any right or claim of contribution arising from or relating to the Property or to any oil or hazardous material at the Property. The provisions of this section shall survive any termination of this Agreement.

6.     Town Obligations.  Upon: (a) the Owners paying to the Town the full Escrowed Funds plus the Town's standard $50.00 fee for issuance of a certificate of occupancy, and (b) the recording of a valid quitclaim deed for consideration at the Registry that grants to the Owners the Property in fee, and provided the Owners have not breached and are not in default of this Agreement, the Town shall provide to the Owners a certificate of occupancy for the House (the "Certificate of Occupancy") subject to the terms of this Agreement.  Notwithstanding any provision in this Agreement to the contrary, the Town shall bear no costs as a result of the Work or this Agreement and shall have no obligation to complete or submit any applications related to the Property, to perform any Work or other work related to the Property or arising from this Agreement, or to issue any permit or approval except for the Certificate of Occupancy in accordance with this Agreement.  The Inspector and all other officials and employees of the Town shall perform all inspections and review all submissions to the Town reasonably promptly and in their usual manner.  The Town does not warrant or represent to the Owners or any other party that the Property will pass inspections or that there will be no additional costs arising from the Work or the Property, it being agreed by the Owners that it is the sole joint and several responsibility of the Owners, at the Owners' sole costs, to cause the Property to comply with all Legal Requirements.

7.     Release of Escrowed Funds to Owners.  The Escrowed Funds shall only be released to the Owners or their record successors in title to the Property ("Successors") if and when all the Work is fully performed pursuant to this Agreement and applicable Legal Requirements are fully satisfied.  When the Escrowed Funds are released to the Owners or their Successors, the Escrowed Funds shall be released to the Owners or their Successors:  (a) as a single lump sum payable to the Owners jointly by a single check, or (b) provided all Owners and all Successors each certify to the Town in writing the amounts of Escrowed Funds to be released to each of the Owners and Successors, by two separate checks with one check payable to each of the Owners or their Successors.

Notwithstanding any provision in this Agreement to the contrary, the Town may, in the Town's sole discretion and at any time, elect to release all or any portion of the Escrowed Funds to: (a) the Owners, (b) the Successors, (c) any court of competent jurisdiction, or (d) any person that the Town may, with the assent by the Owners and Successors, which assent shall not be unreasonably withheld, conditioned or delayed, appoint as trustee, which trustee shall hold such Escrowed Funds for the benefit of, or apportion and pay to the Owners and Successors such Escrowed Funds.  Notwithstanding any provision in this Agreement to the contrary, the release by the Town of any Escrowed Funds pursuant to this Section 7 shall not be (a) a breach of or default under this Agreement, (b) the sole or contributing basis of or give rise to any claim, demand, liability, damage, action, lawsuit or proceeding against the Town, or (c) waive or excuse any requirements that the Owners or Successors comply with any Legal Requirements, which Legal Requirements shall be applicable in all events and at all times.  In addition to any satisfaction by the Town of any of the Town's obligations under this Agreement, in the event the Town releases all the Escrowed Funds to any (a) Owners, (b) Successors, (c) any court of competent jurisdiction, and/or (d) any trustee appointed by the Town pursuant to this paragraph,

then all the Town's obligations under this Agreement shall, without further action by the Town or any other parties, automatically and immediately be deemed fully satisfied without recourse to the Owners or Successors. The provisions of this Section 7 shall survive any termination of this Agreement.

8.      Notice of Agreement.  The Owners, at the Owners' expense, shall promptly (and no later than five calendar (5) days after the deed to the Owners for the Property is recorded at the Registry and prior to any sale or transfer of any portion of or interest in the Property) cause a Notice of Agreement that informs prospective purchasers and transferees of any portions of or interests in the Property of the existence of this Agreement to be recorded at the Registry in the chains of title for all lots comprising the Property.  Such Notice of Agreement shall be in the form attached hereto as Exhibit A.  The Owners shall reasonably promptly provide the Town with a copy of such Notice of Agreement as recorded at the Registry.  The Owners shall make copies of this Agreement fully and reasonably available to any prospective purchasers and transferees of any portions of and interests in the Property upon request.

9.      Trustee Certification.  The Owners warrant and represent to the Town that the undersigned each has full and complete authority to execute this Agreement and to grant the rights and assume the obligations as provided herein.

10.      Release and Indemnification.  The Owners, for themselves and all their successors and assigns, hereby jointly and severally release, indemnify and holds the Town harmless from and against all liabilities, losses, damages, costs, expenses, fees (including but not limited to reasonable attorneys' fees), causes of action, suits, petitions, claims, demands, appeals, proceedings, abatements and judgments of any nature arising from (a) any acts or omissions occurring before the date of this Agreement, and (b) damages to the Property arising from this Agreement or the Work except to the extent (i) a portion of the Work is performed by the Town, (ii) such portion of the Work is not performed in a good and workmanlike manner, and (iii) the Town, after reasonable written notice from the Owners within two (2) years of the date of this Agreement describing in reasonable detail such Work allegedly not performed in a good and workmanlike manner, fails to cause such portion of the Work to be performed in a good and workmanlike manner within a reasonable amount of time.  This Section 10 shall survive any termination of this Agreement.  Such release and indemnification shall not bar the Owners' or Successors rights to enforce the terms of this Agreement.

11.      Notices.  Unless otherwise specified herein, all notices, demands, requests, consents, approvals and other instruments required or permitted to be given pursuant to the terms of this Agreement shall be in writing and deemed properly given if sent by hand delivery, nationally recognized overnight mail carrier or certified mail, return receipt requested, to the parties at their addresses set forth in the initial paragraph of this Agreement.  For the purposes of this section, the date of receipt shall be deemed to be the date of delivery by hand if hand delivered, one (1) day after mailing if sent by overnight mail and three (3) days after mailing if sent by registered mail.

12.      Municipal Regulation.  Notwithstanding any provision herein to the contrary, no provision of this Agreement or any activity at or use of the Property shall (a) relieve the Owners from any other legal or contractual obligations or compliance with any applicable laws, rules,

codes, regulations or bylaws regarding the Property, including without limitation bylaws and regulations of the Town, or (b) waive, bar, diminish or in any way affect:  (i) any legal or equitable right of the Town to regulate or issue any order with respect to any portion of the Site pursuant to any applicable statute, code, regulation or bylaw or to pursue any other claim, action, suit, damages or demand related thereto, or (ii) any limitations on liability afforded a body politic of the Commonwealth of Massachusetts.

13.    Successors and Assigns.  The rights and obligations set forth in this Agreement shall apply to and be binding upon all successors and assigns of the parties hereto, and the same shall have the benefits of and be responsible for such rights and obligations.  Notwithstanding the foregoing, the Owners shall not assign their rights or delegate their duties to any other parties without the express written consent by the Town in each instance, which consent may be withheld for any or no reason.  In the event of an assignment or delegation is made without such Town consent, such assignment or delegation shall, at the Town's sole election, be deemed void and the Escrowed Funds shall be forfeited to the Town for any use or appropriation by the Town.

14.    Miscellaneous.  This Agreement shall be governed by and interpreted under the laws of the Commonwealth of Massachusetts.  This Agreement reflects the entire agreement of the parties with respect to the matters contained herein.  This Agreement shall only be modified by a written amendment executed by the Town, all the Owners or their successors in interest.  If any provision or condition of this Agreement shall be deemed invalid or unenforceable by any court with jurisdiction, then the remaining provisions and conditions shall remain in full force and effect and shall be valid and enforceable to the fullest extent permitted by law.  This Agreement may be executed in several counterparts and by each party on a separate counterpart, each of which when so executed and delivered shall be an original, and all of which together shall constitute one instrument.

[Remainder of page intentionally left blank.  Signatures follow on next page(s).]

Executed as a sealed instrument as of the date first written above.

_____
[Name]


_____
[Name]



Town of Wilmington,
By its Board of Selectmen:



_____
Jeffrey Hull, its duly authorized
Town Manager acting by and through
the vote of the Board of Selectmen

Exhibit A

Form of Notice for Recording

<u>NOTICE</u>
<u>of Agreement regarding 4 Poplar Street, Wilmington, Massachusetts</u>

This Notice is hereby provided and recorded on behalf of _____ and _____ having an address of 4 Poplar Street, Wilmington, Massachusetts 01887 ("Owners") and the Town of Wilmington, a Massachusetts municipal corporation and political subdivision of the Commonwealth of Massachusetts having an address of Town Hall, 121 Glen Road, Wilmington, Massachusetts 01887 (the "Town"), that the Owners and Town have entered into a certain Agreement regarding 4 Poplar Street, Wilmington, Massachusetts ("Agreement") affecting the property and improvements thereto known as 4 Poplar Street, Wilmington, Massachusetts and further described by the plan entitled "Wilmington Gardens - Addition, Wilmington, Mass.," dated June 12, 1909 and recorded at the Registry in Plan Book 26, as Plan No. 36 as Lots 192 through 204 (inclusive), together with all the improvements thereto.

The Agreement is on file with the Town of Wilmington's Office of Planning and Conservation located the Town of Wilmington Town Hall in Wilmington, Massachusetts and copies are available upon request.

[Remainder of page intentionally left blank.  Signatures follow on next page(s).]

Executed under seal this _____ day of _____, 2017.


_____
[Name]


_____
[Name]



Town of Wilmington,
By its Board of Selectmen:



_____
Jeffrey Hull, its duly authorized
Town Manager acting by and through
the vote of the Board of Selectmen

Commonwealth of Massachusetts
_____ County, SS.

On this _____ day of _____, 2017, before me, the undersigned notary public, personally appeared _____, proved to me through satisfactory evidence of identification, which were ☐ photographic identification with signature issued by federal or state governmental agency, ☐ oath or affirmation of a credible witness, ☐ personal knowledge of the undersigned, to be the person(s) whose names are signed on the preceding or attached document, and acknowledged to me that he signed it voluntarily for its stated purpose.

_____
Notary Public
My commission expires:


Commonwealth of Massachusetts
_____ County, SS.

On this _____ day of _____, 2017, before me, the undersigned notary public, personally appeared _____, proved to me through satisfactory evidence of identification, which were ☐ photographic identification with signature issued by federal or state governmental agency, ☐ oath or affirmation of a credible witness, ☐ personal knowledge of the undersigned, to be the person(s) whose names are signed on the preceding or attached document, and acknowledged to me that he signed it voluntarily for its stated purpose.

_____
Notary Public
My commission expires:


Commonwealth of Massachusetts
Middlesex County, SS.

On this _____ day of _____, 2017, before me, the undersigned notary public, personally appeared Jeffrey Hull as the Town Manager of the Town of Wilmington, proved to me through satisfactory evidence of identification, which were ☐ photographic identification with signature issued by federal or state governmental agency, ☐ oath or affirmation of a credible witness, ☐ personal knowledge of the undersigned, to be the person(s) whose names are signed on the preceding or attached document, and acknowledged to me that he signed it voluntarily for its stated purpose.

_____
Notary Public
My commission expires:

# EXHIBIT G



The Official Website of the Executive Office of Housing and Economic Development (EOHED)

**Housing and Economic
Development**

Home    Initiatives    Executive Office of Housing and Economic...    DHCD    DHCD Fraud, Waste and Abuse Reporting

## DHCD Fraud, Waste and Abuse Reporting



The Department of Housing and Community Development is offering the following form as a means of reporting suspected fraudulent activities. Other options are to email dhcdhotline@massmail.state.ma.us or to call DHCD directly at 617-573-1100.

The Comptroller of the Commonwealth provides guidance and information on their official website - please visit there for additional information.

Hotline Telephone Numbers for reporting suspected fraud, waste, or abuse in the Commonwealth state government are:

- Inspector General: (800) 322-1323

- Attorney General: Fair Labor Helpline (617) 727-3465 to report violations of minimum wage and overtime laws and requirement for timely payment of wages.

- Division of Unemployment Assistance: (800) 354-9927 to report unreported wages or persons collecting benefits while working.

- State Auditor: (617) 727-6200 for state agencies to report variances, losses, shortages, thefts of funds or property.

- Inspector General Office, Social Security Administration: 1-800-269-0271

- Social Security Office: 1-800-772-1213.

> Please ensure all values are in a proper format.

**Fraud, Waste, and Abuse Hotline Report Form
Department of Housing and Community Development (DHCD)**

The mission of the Department of Housing and Community Development (DHCD) is to strengthen cities, towns and neighborhoods to enhance the quality of life of Massachusetts residents. Fraud, waste and abuse are counter-productive to DHCD's mission and we would greatly appreciate any information you may have to help us ensure that the resources of the Commonwealth of Massachusetts are used effectively and appropriately.

The frequently asked questions and other guidelines posted on this page may be of assistance. If anything about this process is unclear, you can also call us at 617-573-1100.

All tips are anonymous unless you provide your name and contact information.

### Description of misconduct

What type of Fraud, Abuse, or Waste are you reporting?*

○ Grants

○ Contracts

○ Programs

◉ Operations

○ Other

Please thoroughly describe the event or situation. Detailed, complete and accurate information will improve DHCD's ability to respond to your allegation.*

the Town of Wilmington has displayed a very large DRAFT "OFFICIAL MAP" since April 4 2011 in the Building Inspectors Office and uses it as their alleged Official Map section 81E Chapter 41 of Massachusetts General Laws. The Map was first adopted in 1973, the town never filed a copy of the map with the EOCD as required by statute. They have never adopted an application, fee schedule or rule and regulations to accept hear and order certificates as required by MGL chapter 41 section 81Q. myself and others filed a town meeting petition in 2011 to update, amend and revise the Official Map if valid and the town voted it down. Myself and others have filed a petition this year to have the town adopt and accept MGL chapter 41 sections F, G and H. And at the joint public hearing of the Finance Committee and Planning Board held March 15 2016 at the reading of the Warrant the skipped right over the article. This is on vimeo video WCTV.

## Describe the person or entity you are reporting

Please identify the primary person or entity who engaged in the alleged misconduct

John T Spaulding Inspector of Buildings

Company or organization of the primary person who engaged in the misconduct, if applicable

Town of Wilmington

Address

121 Glen Road

| Wilmington | Massachusetts | ˅ | Ma |
| City | State | | ZIP Code |

Phone Number

(978) 658-3311

Email Address (if known)

jhull@wilmingtonma.gov

Additional individuals involved in the alleged misconduct (if applicable).

Jeffrey Hull Town Manager, Town Engineer, Planning Director Planning Board

## Whistleblower Protection

Have you been discharged, demoted or otherwise discriminated against because you disclosed this alleged misconduct?*

◉ Yes

○ No

○ I don't know

Please explain:

The Town of Wilmington Administration has failed to issue a building permit until March 10 2004, over 14 years of litigation and now the Town has blocked the issuance of the Certificate of Occupancy since 2005. They have scared off and dissuaded every potential buyer of this property since 2008. And have overtaxed the property to the sum of over $ 14,000 per year. And are drained 100's of thousand's of dollars from my family and I. They have squandered 100's of thousands of taxpayer funds it attorney fees and court costs.

## Contact Preference

Please choose one of the following three options*

◉ If necessary, you may contact me for additional information and I do not place any restrictions on the release of my contact information.

○ If necessary, you may contact me for additional information, but please keep my name confidential and do not share it outside of the Department of Housing and Community Development unless required to do so by law such as a court order or subpoena

○ I wish to remain anonymous.

If you choose to remain anonymous, it is not necessary to fill out the contact information. However, please keep in mind that your decision to elect anonymity may limit our ability to conduct an inquiry, if one is warranted, or to appropriately address your issue. For example, if you choose to remain anonymous, we will not be able to follow-up with you if we need additional information or have questions about the details of your complaint. In some cases, if we do not have sufficient information, we may be unable to act on your complaint. As a result, the more information you can provide, the better chance we have of addressing any wrongdoing that has been committed. You can always request that your identity and/or contact information remain confidential and not be shared outside of DHCD. Please consider providing your name and/or contact information to allow for follow-up contact by this office.

## Contact Information

If we may contact you, please tell us your name

| Mark | | Nelson |
First Name                                    Last Name

Your Address

| 4Poplar Street

| Wilmington | Massachusetts ∨ | Ma |
City                State                ZIP Code

Your Phone Number

| (978) 657-0011

Your Email Address

| nelson.p.1313@gmail.co

If you choose to remain anonymous, it is not necessary to fill out the contact information. However, please keep in mind that your decision to elect anonymity may limit our ability to conduct an inquiry, if one is warranted, or to appropriately address your issue. For example, if you choose to remain anonymous, we will not be able to follow-up with you if we need additional information or have questions about the details of your complaint. In some cases, if we do not have sufficient information, we may be unable to act on your complaint. As a result, the more information you can provide, the better chance we have of addressing any wrongdoing that has been committed. You can always request that your identity and/or contact information remain confidential and not be shared outside of DHCD. Please consider providing your name and/or contact information to allow for follow-up contact by this office.

This is an official form provided by DHCD, Massachusetts

617-573-1100       www.mass.gov/dhcd

| Submit Form |

| Please ensure all values are in a proper format. |

**Did you find the information you were looking for on this page?** '

○ Yes

○ No

| Send Feedback |

© 2016 Commonwealth of Massachusetts.

Mass.Gov® is a registered service mark of the Commonwealth of Massachusetts.

EOHED Site Policies   Contact Us







Commonwealth of Massachusetts

# DEPARTMENT OF HOUSING & COMMUNITY DEVELOPMENT

Deval L. Patrick, Governor   ◆   Timothy P. Murray, Lt. Governor   ◆   Tina Brooks, Undersecretary

June 16, 2009

Mark Nelson
6 Polk Street
Wilmington, MA  01887

RE:    Public Records Request

Dear Mr. Nelson:

This Department has search its files including archive files and we do not have an "Official Map" of the Town of Wilmington adopted on June 25, 1973 or any other map, in our possession.

Very truly yours,

Candace Tempesta
Contracts Specialist
Office of the Chief Counsel

# EXHIBIT H

 Gmail

**Mark Nelson <nelson.p.1313@gmail.com>**

# Federal Civil Rights Violations.

**ago (AGO)** <ago@state.ma.us>            Wed, Oct 1, 2014 at 12:57 PM
To: Mark Nelson <nelson.p.1313@gmail.com>

Dear Mr. Nelson:

Thank you for contacting the Office of the Attorney General Martha Coakley.

To pursue this matter further, you may consider contacting the **Federal Bureau of Investigation** at the following address and telephone number:

       **Federal Bureau of Investigation**

       One Center Plaza

       Suite 600

       Boston, MA 02108

       Phone: (617) 742-5533

       Fax: (617) 223-6327

       E-mail: Boston@ic.fbi.gov

I hope this information will be useful, and thank you again for contacting the Office of Attorney General Martha Coakley.

Sincerely,

Constituent Services Coordinator

Public Inquiry & Assistance Center

Office of Attorney General Martha Coakley

 Gmail

**Mark Nelson <nelson.p.1313@gmail.com>**

# Federal Civil Rights Violations.

**Jeffrey Hull** <jhull@wilmingtonma.gov>                    Wed, Oct 1, 2014 at 5:50 PM
To: Mark Nelson <nelson.p.1313@gmail.com>

Mr. Nelson,

I have looked into your allegation regarding statements which you claim that Ms. Hamilton is making to prospective buyers of 2 and 4 Poplar Street.  Based on that it is clear to me that Ms. Hamilton is simply responding to questions being asked by these persons and is doing so merely with a statement of the legal requirements which would pertain to any residential property and nothing more.  This is her obligation and in fact the Town would not be complying with its legal duties if it refused to provide the information when asked by a member of the public.  There are no statements being made about you or your family, or regarding the dispute between you and the Town, nor is "false information" being provided.

Jeffrey M. Hull

Town Manager
Town of Wilmington
121 Glen Road
Wilmington, MA 01887
phone: 978 - 658-3311

email: jhull@wilmingtonma.gov

[Quoted text hidden]

# EXHIBIT I

Mr. Gregory Bendel,
Chairman Board of Selectman;
Mr. Jeffery Hull Town Manager;
Ms. Christine Touma-Conway, Town Clerk;
Town Hall
121 Glen Rd.
Wilmington, Ma. 01887              July 1, 2019

RE: CHAPTER 258. CLAIMS AND INDEMNITY PROCEDURE FOR THE
COMMONWEALTH, ITS MUNICIPALITIES, COUNTIES AND DISTRICTS AND
THE OFFICERS AND EMPLOYEES THEREOF

**Dear Mr. Bendel;**

Please be advised that pursuant to the above referenced Massachusetts
General Law, I claim damages against the following listed town officials and
town employees, jointly and severally and Individually for an amount as set forth
below for each and every violation of both Federal and State Constitutional
rights to liberty, property and the right to earn a living, harassment, threats,
interference with contracts, collusion, conspiracy, extortion, fraud, breach of
agreement, deceptive practice, intentional tort and or negligence and failure to
educate and properly train and defamation and slander as specified herein;

1.   The defendant Town of Wilmington (Town) is a municipality existing under the laws
of The Commonwealth of Massachusetts and is or was at all times relevant to the claims
brought in this complaint the employer and or insurer with a usual place of business at
121 Glen Road, Wilmington Massachusetts 01887.

2.   The defendant Jeffrey M. Hull (Hull) is an individual and duly appointed official, at all
times relevant to this complaint is an individual residing in Billerica and is the Town
Manager of the town.

3.   The defendant Gregory B. Bendel (Bendel) is an individual and duly elected official,
at all times relevant to this complaint was an individual residing in Wilmington and
is the Chairman of the Board of Selectman of the town.

4.   The defendant Kevin A. Caira (Caira) is an individual and duly elected official at
all times relevant to this complaint is an individual residing in Wilmington and is a
member of the Board of Selectman.

5.   The defendant Jonathan R. Eaton (Eaton) is an individual and duly elected official
at all times relevant to this complaint is an individual residing in Wilmington and is

a member of the Board of Selectman and was on the of the Town Finance Committee.

6. The defendant Michael McCoy (McCoy) is an individual and duly elected official at all times relevant to this complaint is an individual residing in Wilmington and is a member of the Board of Selectman.

7. The defendant Jomarie F. O'Mahony (O'Mahony) is an individual and duly elected official at all times relevant to this complaint is an individual residing in Wilmington and is a member of the Board of Selectman.

8. The defendant Christine Touma-Conway (Touma-Conway) is an individual and duly appointed official, at all times relevant to this complaint is an individual residing in Methuen and is the Town Clerk of the town.

9. The defendant Valerie Gingrich (Gingrich) is an individual and duly appointed official at all times relevant to this complaint is an individual residing in West Newbury, Essex County and is the Director of Planning and Conservation.

10. The defendant John t. (Al Spaulding (Spaulding) is an individual and duly appointed official at all times relevant to this complaint was an individual residing in Everett and is the Inspector of Buildings & Zoning Enforcement Officer.

11. The defendant Shelly Newhouse (Newhouse) is an individual and duly appointed official at all times relevant to this complaint is an individual residing in Wilmington and is the Health Director.

12. The defendant Karen Rassias, (Rassis) is an individual and duly appointed official at all times relevant to this complaint is an individual residing in North Andover and is the Principal Assessor of the Town of Wilmington.

13. The defendant Paul Alunni (Alunni) is an individual and duly appointed Town Engineer and an individual believed to be residing in Peabody, Essex County.

14. The defendant Michael J. Woods (Woods) is an individual and  duly appointed Superintendent of the Department of Public Works & Superintendent of Streets  and at all times relevant to this complaint and individual residing in Hampstead, NH. County

15. The defendant Marie (Toni) Larivee (LaRivee) is an individual and was duly appointed Senior Clerk of the Building Inspector's Office and Clerk for the Board opf Appeals and at all times relevant to this complaint an individual residing at 20 Sherwood Road Wilmington, Middlesex County.

For more than 32 (thirty two years) the individual defendants have collectively engaged

and continue to engage in coercion and conspiracy, extortion, collusion to intimidate, harass, humiliate, injure and deprive Mr. Mark Nelson, my daughter Ms. Kristen Nelson, and my now deceased parents Mary and George Nelson a decorated Veteran of WWII and both octogenarians, of our civil rights, property rights and those rights protected by the Constitution of the Commonwealth of Massachusetts and the Constitution of The United States of America. As a direct result of these actions we have been put to a great expense, experienced anxiety, emotional distress and suffered substantial financial hardship. I believe that town representatives actions were fraudulent, deceptive practice, negligent and or intentional tort and that the laws, rules, regulations and policies adopted were promulgated and adopted negligently and without regard for the rights of the public and exhibits lack of that degree of due care which reasonable individuals would show in executing their duties. On numerous occasions, various Town Department Heads provide misdirection, misinformation and misleading false applications. The individuals referred to above and any others that may become known are likewise the object of this demand relative to their primary individual responsibilities in an amount to be determined and will be subject to court action in the event that this matter is not settled to my satisfaction. A clear pattern of practice has been demonstrated over the past thirty two years showing an obvious scheme of harassment, as well as a total disregard to the life, liberties and pursuit of happiness and those involved will be held accountable. Most notably; Ms. Marie LaRivee's supervisory negligence, abuse of authority and selective enforcement all as identifiable tort by returning 3 completed Board of Appeals applications appealing the decisions of the Inspector of Buildings.

The following unresolved matters must be resolved as soon as possible;

A. Actions of Town Administration has violated both the Federal and State Constitutions denying the Freedom and Liberty to earn a living and develop property.                                   Damages in an amount of $ 3,000,000

B. The Towns Failure to Update the alleged "OFFICIAL MAP" SINCE 1973, failure to comply with Commonwealth of Massachusetts statutes and adopt compliant applications, fee schedules or Rules and Regulations.

C. Defamatory slanderous statements made by Town Manager Jeffrey Hull at Open Town Meeting that I, Mark Nelson will obtain permits when I comply with what the Town demands. Mr. Hull also told the former Town Clerk, Ms. Sharon George not to date time stamp my applications as required by law.

D.        Over the years the Town Administration has blocked every Petitioned Town meeting Article submitted with Violations of the Open Meeting Laws.

Based on the above and stated, I respectfully request that any and all related file folders be set aside and secured as well as all electronic mails and hard drives for those individuals listed. If the town has a published policy that relates to these type matters, please provide me with a copy of that published policy and date that it went into effect. This letter also serves that this municipality knows or should have known about an underlying identifiable tort and supervisory negligence as an ongoing liability with actions intentional and wanton and reckless.

Respectfully submitted

Mark D. Nelson  6 Polk St. Wilmington, Ma. 01887

MAILED CMRRR70183090000139465000

Cc:

Gregory Bendel 57 Roosevelt Rd. Wilmington, Ma. 01887

Michael V. McCoy 11 Treasure Hill Rd Wilmington, Ma. 01887

Kevin Caira 251 Woburn St. Wilmington, Ma. 01887

 Johnathan Eaton   Wilmington, Ma. 01887

Jomarie O"Mahoney 21 Albany St. Wilmington, Ma. 01887

AGENDA FOR BOARD OF SELECTMEN MEETING

July 8, 2019 @ 6:15 p.m.

Room 9, 121 Glen Road, Wilmington

*REVISED -- ORIGINAL POSTED WEDNESDAY, JULY 3, 2019 AT 4:30 P.M.*

RECEIVED
TOWN CLERK

2019 JUL -5 PM 3:12

TOWN OF WILMINGTON, MA

1. **Roll Call:**    Chairman    BENDEL
                     Selectman    CAIRA
                     Selectman    EATON
                     Selectman    McCOY
                     Selectman    O'MAHONY

   **6:15**    **EXECUTIVE SESSION** for the Purpose of Discussing Strategies with
               Respect to Collective Bargaining with the American Federation of State,
               County and Municipal Employees (AFSCME) Local 1703 Unit II (Public
               Works, Clerical & Library Employees) in Accordance with MGL Chapter 30A,
               Section 21(a)3 as an Open Meeting may have a Detrimental Effect on the
               Negotiating Position of the Town and the Chair so Declares and to Approve
               Executive Session Minutes from June 24, 2019 in Accordance with MGL
               Chapter 30A, Section 22.

   Pledge of Allegiance

2. **Transmitting of Treasury Warrant:**    #    52, 52A, 53, 53A    .

3. **Approval of Minutes of:**    _____ .

4. **Appointments:**

   7:00    Mike Errera, Vice President of Supply Chain Planning & Logistics and General
           Manager, Analog Devices, re:  Status of Expansion to Analog Campus

5. **Communications:**

   Memo from Valerie Gringrich, Director of Planning & Conservation, re:  Open Space &
       Recreation Committee.

   Letter from Kerry Bogdan, Risk Analysis Branch Chief, Mitigation Division, FEMA Region 1,
       re:  Digital Flood Insurance Rate Maps.

   Memo from Paul Alunni, Town Engineer, re:  Digital Flood Insurance Rate Maps.

SENDER: COMPLETE THIS SECTION

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

Gregory Bendel Chairman
Board of Selectman
121 Glen Rd.
Wilmington Ma. 01887

9590 9402 4621 8323 1766 27

2. Article Number (Transfer from service label)

   7018 3090 0001 3946 5000

PS Form 3811, July 2015 PSN 7530-02-000-9053

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X                                    ☑ Agent
                                     ☐ Addressee
B. Received by (Printed Name)        C. Date of Delivery
  Michael Feiler                       7-5-19
D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
☐ Adult Signature                    ☐ Priority Mail Express®
☐ Adult Signature Restricted Delivery ☐ Registered Mail™
☑ Certified Mail®                    ☐ Registered Mail Restricted
☐ Certified Mail Restricted Delivery    Delivery
☐ Collect on Delivery                ☐ Return Receipt for
☐ Collect on Delivery Restricted Delivery  Merchandise
☐ Insured Mail                       ☐ Signature Confirmation™
☐ Insured Mail Restricted Delivery   ☐ Signature Confirmation
                                        Restricted Delivery

Domestic Return Receipt

| CIVIL ACTION COVER SHEET | DOCKET NUMBER 2081CV01571 7/7/2020 | Trial Court of Massachusetts The Superior Court |
|---|---|---|

| **PLAINTIFF(S):** MARK D NELSON | **COUNTY** Middlesex |
|---|---|
| **ADDRESS:** | |
| | **DEFENDANT(S):** JEFFREY HULL TOWN MANAGER, VALERIE GINGRICH, JOHN SPAULDIN |
| | TOWN OF WILMINGTON ET AL |
| **ATTORNEY:** *Pro Se* | **RECEIVED** |
| **ADDRESS:** | **ADDRESS:** 121 GLEN RD WILMINGTON MA 01887 |
| **BBO:** | |

### TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| E17.AC1.C01BE1 | CIVIL RIGHTS,LAND TAKING,TORT,FRAUD | A..F | [x] YES [ ] NO |

*If "Other" please describe:

| Is there a claim under G.L. c. 93A? [ ] YES [ ] NO | Is this a class action under Mass. R. Civ. P. 23? [ ] YES [ ] NO |
|---|---|

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

#### TORT CLAIMS
(attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses ............................................................................................ $_____
2. Total doctor expenses ............................................................................................... $_____
3. Total chiropractic expenses ..................................................................................... $_____
4. Total physical therapy expenses ............................................................................. $_____
5. Total other expenses (describe below) ................................................................... $_____
Subtotal (A): $_____

B. Documented lost wages and compensation to date ....................................................... $_____
C. Documented property damages to date ......................................................................... $_____
D. Reasonably anticipated future medical and hospital expenses ....................................... $_____
E. Reasonably anticipated lost wages ............................................................................... $_____
F. Other documented items of damages (describe below) ................................................... $ 3,000,000

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

TOTAL (A-F):$3,000,000

#### CONTRACT CLAIMS
(attach additional sheets as necessary)

[ ] This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).
Provide a detailed description of claim(s):

TOTAL: $_____

**Signature of Attorney/ Unrepresented Plaintiff: X**   Date: **JULY 4 2020**

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

### CERTIFICATION PURSUANT TO SJC RULE 1:18
I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

**Signature of Attorney of Record: X**   Date:

CJ

# CIVIL ACTION COVER SHEET INSTRUCTIONS
## SELECT CATEGORY THAT BEST DESCRIBES YOUR CASE

**AC Actions Involving the State/Municipality \***

AA1 Contract Action involving Commonwealth,
   Municipality, MBTA, etc.                                   (A)
AB1 Tortious Action involving Commonwealth,
   Municipality, MBTA, etc.                                   (A)
AC1 Real Property Action involving
   Commonwealth, Municipality, MBTA etc. (A)
AD1 Equity Action involving Commonwealth,
   Municipality, MBTA, etc.                                   (A)
AE1 Administrative Action involving
   Commonwealth, Municipality, MBTA,etc. (A)

**CN Contract/Business Cases**

A01 Services, Labor, and Materials                      (F)
A02 Goods Sold and Delivered                            (F)
A03 Commercial Paper                                         (F)
A04 Employment Contract                                    (F)
A05 Consumer Revolving Credit - M.R.C.P. 8.1        (F)
A06 Insurance Contract                                        (F)
A08 Sale or Lease of Real Estate                        (A)
A12 Construction Dispute                                      (A)
A14 Interpleader                                                  (F)
BA1 Governance, Conduct, Internal
   Affairs of Entities                                          (A)
BA3 Liability of Shareholders, Directors,
   Officers, Partners, etc.                                   (A)
BB1 Shareholder Derivative                                 (A)
BB2 Securities Transactions                               (A)
BC1 Mergers, Consolidations, Sales of
   Assets, Issuance of Debt, Equity, etc.         (A)
BD1 Intellectual Property                                     (A)
BD2 Proprietary Information or Trade
   Secrets                                                        (A)
BG1 Financial Institutions/Funds                         (A)
BH1 Violation of Antitrust or Trade
   Regulation Laws                                            (A)
A99 Other Contract/Business Action - Specify (F)

\* Choose this case type if ANY party is the
Commonwealth, a municipality, the MBTA, or any
other governmental entity UNLESS your case is a
case type listed under Administrative Civil Actions
(AA).

† Choose this case type if ANY party is an
incarcerated party, UNLESS your case is a case
type listed under Administrative Civil Actions (AA)
or is a Prisoner Habeas Corpus case (E97).

**ER Equitable Remedies**

D01 Specific Performance of a Contract       (A)
D02 Reach and Apply                                     (F)
D03 Injunction                                               (F)
D04 Reform/ Cancel Instrument                    (F)
D05 Equitable Replevin                                  (F)
D06 Contribution or Indemnification               (F)
D07 Imposition of a Trust                              (A)
D08 Minority Shareholder's Suit                    (A)
D09 Interference in Contractual Relationship  (F)
D10 Accounting                                             (A)
D11 Enforcement of Restrictive Covenant     (F)
D12 Dissolution of a Partnership                   (F)
D13 Declaratory Judgment, G.L. c. 231A        (F)
D14 Dissolution of a Corporation                   (F)
D99 Other Equity Action                                (F)

**PA Civil Actions Involving Incarcerated Party †**

PA1 Contract Action involving an
   Incarcerated Party                                   (A)
PB1 Tortious Action involving an
   Incarcerated Party                                   (A)
PC1 Real Property Action involving an
   Incarcerated Party                                   (F)
PD1 Equity Action involving an
   Incarcerated Party                                   (F)
PE1 Administrative Action involving an
   Incarcerated Party                                   (F)

**TR Torts**

B03 Motor Vehicle Negligence - Personal
   Injury/Property Damage                            (F)
B04 Other Negligence - Personal
   Injury/Property  Damage                           (F)
B05 Products Liability                                    (A)
B06 Malpractice - Medical                             (A)
B07 Malpractice - Other                                 (A)
B08 Wrongful Death - Non-medical                (A)
B15 Defamation                                             (A)
B19 Asbestos                                               (A)
B20 Personal Injury - Slip & Fall                   (F)
B21 Environmental                                         (F)
B22 Employment Discrimination                   (F)
BE1 Fraud, Business Torts, etc.                    (A)
B99 Other Tortious Action                             (F)

**RP Summary Process (Real Property)**

S01 Summary Process - Residential               (X)
S02 Summary Process - Commercial/
   Non-residential                                         (F)

**RP Real Property**

C01 Land Taking                                           (F)
C02 Zoning Appeal, G.L. c. 40A                    (F)
C03 Dispute Concerning Title                        (F)
C04 Foreclosure of a Mortgage                    (X)
C05 Condominium Lien & Charges                (X)
C99 Other Real Property Action                    (F)

**MC Miscellaneous Civil Actions**

E18 Foreign Discovery Proceeding                (X)
E97 Prisoner Habeas Corpus                        (X)
E22 Lottery Assignment, G.L. c. 10, § 28       (X)

**AB Abuse/Harassment Prevention**

E15 Abuse Prevention Petition, G.L. c. 209A   (X)
E21 Protection from Harassment, G.L. c. 258E(X)

**AA Administrative Civil Actions**

E02 Appeal from Administrative Agency,
   G.L. c. 30A                                               (X)
E03 Certiorari Action, G.L. c. 249, § 4           (X)
E05 Confirmation of Arbitration Awards         (X)
E06 Mass Antitrust Act, G.L. c. 93, § 9         (A)
E07 Mass Antitrust Act, G.L. c. 93, § 8         (X)
E08 Appointment of a Receiver                     (X)
E09 Construction Surety Bond, G.L. c. 149,
   §§ 29, 29A                                               (A)
E10 Summary Process Appeal                       (X)
E11 Worker's Compensation                          (X)
E16 Auto Surcharge Appeal                          (X)
E17 Civil Rights Act, G.L. c.12, § 11H            (A)
E24 Appeal from District Court
   Commitment, G.L. c.123, § 9(b)                 (X)
E25 Pleural Registry (Asbestos cases)
E94 Forfeiture, G.L. c. 265, § 56                   (X)
E95 Forfeiture, G.L. c. 94C, § 47                  (F)
E99 Other Administrative Action                    (X)
Z01 Medical Malpractice  - Tribunal only,
   G.L. c. 231, § 60B                                     (F)
Z02 Appeal Bond Denial                               (X)

**SO Sex Offender Review**

E12 SDP Commitment, G.L. c. 123A, § 12      (X)
E14 SDP Petition, G.L. c. 123A, § 9(b)           (X)

**RC Restricted Civil Actions**

E19 Sex Offender Registry, G.L. c. 6, § 178M (X)
E27 Minor Seeking Consent, G.L. c.112, § 12S(X)

TRANSFER YOUR SELECTION TO THE FACE SHEET

EXAMPLE:

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| | | | [x] YES      [ ] NO |
| B03 | Motor Vehicle Negligence-Personal Injury | F | |

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

**DUTY OF THE PLAINTIFF** - The plaintiff shall set forth, on the face of the civil action cover sheet (or attach additional sheets as necessary), a statement specifying the facts on which the plaintiff relies to determine money damages. A copy of such civil action cover sheet, including the statement as to the damages, shall be served with the complaint. **A clerk-magistrate shall not accept for filing a complaint, except as otherwise provided by law, unless it is accompanied by such a statement signed by the attorney or self-represented litigant.**

**DUTY OF THE DEFENDANT** - If the defendant believes that the statement of damages filed by the plaintiff is inadequate, the defendant may file with his/her answer a statement specifying the potential damages which may result if the plaintiff prevails.

## A CIVIL COVER SHEET MUST BE FILED WITH EACH COMPLAINT.
### FAILURE TO COMPLETE THIS COVER SHEET THOROUGHLY AND ACCURATELY
### MAY RESULT IN DISMISSAL OF THIS ACTION.